IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| WILLIAM SCOTT JONES | § | |
| PLAINTIFF | § | |
| vs. | § | |
| | § | Civil Action No. 5:19CV104 |
| SOUTHWESTERN CORRECTIONAL, LLC | § | (Jury) |
| ET AL | § | |
| DEFENDANTS | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff William Scott Jones, by and through the undersigned counsel, and files his First Amended Complaint against Defendants Southwest Correctional, LLC d/b/a LaSalle Corrections, LLC and LaSalle Southwest Corrections; LaSalle Management Company; Bowie County, Texas; City of Texarkana, Texas; Jay Eason, Individually; James McCormick, Individually; Michelle Arnold, Individually; Joni Slimak-McFaul, Individually; Markesha Jones, Individually; Jane Does 1-10; and John Does 1-10, and in support thereof would respectfully show unto the Court as follows:

## INTRODUCTION

1.   This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and Arkansas law resulting from events that happened during the pretrial detention of William Scott Jones ("Jones" or "Plaintiff") at the Bi-State Justice Center Jail. The jail sits on the border of Texas and Arkansas and is run by a private, for profit correctional corporation. The events giving rise to this complaint began on July 17, 2018, when Plaintiff was arrested by Texarkana, Texas

police for "walking in the roadway." Plaintiff was severely beaten during his incarceration. Defendants violated Plaintiff's rights guaranteed by the Fourteenth Amendment to the Constitution and under the laws of the state of Arkansas. Specifically, Defendants deprived Plaintiff of medication and adequate medical care; ignored Plaintiff's ongoing serious medical needs; failed to monitor Plaintiff despite his clear need for medical treatment; failed to call for emergency medical services; attempted to "dump" Plaintiff by releasing him from custody rather than providing medical care for his serious medical needs; and otherwise forced Plaintiff to endure severe physical pain and mental suffering for almost two days with full knowledge of his injuries and his deteriorating condition.

2.     This action seeks to hold Defendants liable for Plaintiff's injuries, which were caused by Defendants' disturbing and ongoing pattern and practice of violating citizens' constitutional rights in order for the LaSalle Defendants to turn a profit.

## JURISDICTION AND VENUE

3.     This Court has original subject matter jurisdiction over Plaintiff's civil rights claims under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343 (civil rights). This Court has supplemental jurisdiction over the Plaintiffs' related state claims pursuant to 28 U.S.C. § 1367(a).

4.     This Court has personal jurisdiction over each of the individually named Defendants because they either (1) reside in this judicial district or (2) they have sufficient minimum contacts in the state of Texas, and the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. The Court has personal jurisdiction over each of

the LaSalle Defendants because they regularly conduct business in the state of Texas.

5.    Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b)(3) because all Defendants are subject to this Court's personal jurisdiction in this action.

6.    Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the acts and omissions forming the basis for the causes of action occurred in Bowie County, Texas.

PARTIES

PLAINTIFF

7.    Plaintiff William Scott Jones is a United States citizen and resident of the state of Texas.

DEFENDANTS

8.    Defendant Southwest Correctional, LLC d/b/a LaSalle Corrections, LLC and LaSalle Southwest Corrections (hereinafter "LaSalle") is a Texas limited liability company doing business in this judicial district for purposes of profit. LaSalle is considered a "person" under 42 U.S.C. § 1983 and Ark. Code Ann. 16-123-105. LaSalle, which is owned, controlled or managed by Defendant LaSalle Management Company, LLC, manages the day-to-day operations of the Bi-State Justice Center Jail. LaSalle is a final policy maker for Bowie County for purposes of providing jail-related services and meeting the needs of its convicted inmates and pretrial detainees. Said Defendant may be served with process through its registered agent, Tim Kurpiewski, 26228 Ranch Road, Dripping Springs, Texas 78620.

9.    Defendant LaSalle Management Company, LLC ("LaSalle Management") is a Louisiana limited liability company doing business in this judicial district for purposes of profit. LaSalle Management is considered a "person" under 42 U.S.C. 1983 and Ark. Code Ann. 16-

123-105. LaSalle Management is the parent company of Defendant LaSalle and is responsible for ensuring that its subsidiary meets its constitutional obligations in running the jail. Said Defendant may be served with process through the Texas Secretary of State upon its registered agent, William K. McConnell, 192, Bastille Street, Suite 200, Ruston, Louisiana 71270.

10.    Defendant Bowie County is a governmental entity and political subdivision of the state of Texas and is a "person" for purposes of 42 U.S.C. § 1983 and Ark. Code Ann. 16-123-105. Bowie County is responsible for opening the Bi-State Justice Center Jail ("Bi-State Jail"), which sits on the border of Texas and Arkansas in Texarkana, and is physically located on both sides of the state line. The Bi-State Jail houses pretrial detainees and convicted inmates from Texas, Arkansas, and persons being held by the United States Marshal Service. All pretrial detainees confined in the Bi-State Jail are entitled to constitutional protections under the Fourteenth Amendment to the United States Constitution, including the right to constitutionally adequate medical care. Bowie County has a non-delegable duty to ensure the Bi-State Justice Jail meets such constitutional requirements. Said Defendant may be served with process through County Judge James Carlow, Bowie County Courthouse, 710 James Bowie Drive, New Boston, Texas 75570.

11.    Defendant City of Texarkana, Texas is a governmental entity and a political subdivision of the  state of Texas and is a "person" for purposes of 42 U.S.C. § 1983 and Ark. Code Ann. 16-123-105. City of Texarkana, Texas shares responsibility over the Bi-State Jail with Bowie County and routinely arrests and brings detainees, such as Plaintiff, to the Bi-State Jail for pretrial detention and post-conviction sentencing. Texarkana, Texas has a non-delegable duty

to ensure the Bi-State Jail satisfies its constitutional duties to citizens in its custody. Plaintiff was (and is) a citizen of Texarkana, Texas. Said Defendant may be served with process through Mayor Bob Bruggeman, 220 Texas Boulevard, Post Office Box 1967, Texarkana, Texas 75504-1967.

12.    In February of 2013 Defendant Bowie County, with the approval of Defendant City of Texarkana, Texas, contracted with LaSalle and LaSalle Management (for-profit correctional corporations) to operate and manage all aspects of the Bi-State Jail, including the provision of medical care to the jail's population of pretrial detainees and post-conviction prisoners. Pursuant to the contract, Bowie County is obligated to conduct monthly inspections of the Bi-State Jail. Although Defendants Bowie County and City of Texarkana, Texas sought to privatize the operation of the jail by delegating their final policy-making authority to the LaSalle Defendants, they cannot contract away their constitutional obligations and are liable for any unconstitutional corporate customs or policies that resulted in harm to any detainees and inmates confined in the jail.

13.    Defendant Jay Eason is a citizen of the state of Texas. Said Defendant was, at all material times relevant to this complaint, an employee of LaSalle and/or LaSalle Management, serving as Director of Operations for all eleven (11) LaSalle operated jails in Texas, including the Bi-State Jail. Defendant Eason was, at all material times, responsible for oversight of operations at all Texas LaSalle facilities. Said Defendant may be served with process at 26228 Ranch Road, Dripping Springs, Texas 78620.

14.    Defendant James McCormick is, upon information and belief, a citizen of the state of Louisiana. Said Defendant was, at all material times relevant to this complaint, warden of

the Bi-State Jail and an employee of LaSalle and/or LaSalle Management. Defendant McCormick was responsible for overall operation of the jail, and the training and supervision of all jail employees at the Bi-State Jail. Said Defendant may be served with process at 1173 Beaver Lake Drive, Texarkana, Texas 75501.

15.    Defendant Michelle Arnold is, upon information and belief, a citizen of the state of Texas. Said Defendant was, at all material times relevant to this complaint an employee of LaSalle and/or LaSalle Management, and the nursing supervisor and health services administrator at the Bi-State Jail. Defendant Arnold was responsible for the training and supervision of medical staff at the jail, including LVN nurses assigned to work at the Bi-State Jail. Said Defendant may be served with process at 105 W. Front Street, Texarkana, Texas 75501.

16.    Defendant Joni Slimak-McFaul is, upon information and belief, a citizen of the state of Texas. Said Defendant was, at all material times relevant to this complaint, an LVN assigned to work at the Bi-State Jail and an employee of LaSalle and/or LaSalle Management. Defendant McFaul was responsible for providing medical services to detainees, including Plaintiff. Said Defendant may be served with process at 100 N. State Line Avenue, Fourth Floor, Texarkana, Texas 75501.

17.    Defendant Markesha Jones is, upon information and belief, a citizen of the state of Arkansas. Said Defendant was, at all material times relevant to this complaint, an LVN assigned to work at the Bi-State Jail and an employee of LaSalle and/or LaSalle Management. Defendant Arnold was responsible for providing medical services to detainees, including Plaintiff. Said Defendant may be served with process at 100 N. State Line Avenue, 4th Floor, Texarkana, Texas 75501.

18.    Defendants Jane Does #1-10 are female employees, agents or representatives of LaSalle who worked at the Bi-State Jail during the period when Plaintiff was incarcerated. Plaintiff reserves the right to amend the Complaint to reflect the identities of Defendants Jane Does #1-10 as same become known.

19.    Defendants John Does #1-10 are male employees, agents or representatives of LaSalle who worked at the Bi-State Jail during the period when Plaintiff was incarcerated. Plaintiff reserves the right to amend the Complaint to reflect the identities of Defendants John Does #1-10 as same become known.

20.    Each Defendant was, at all material times, operating under color of state law.

## FACTS COMMON TO ALL CLAIMS

21.    LaSalle Corrections, LaSalle Corrections, LLC and/or LaSalle Southwest are responsible for the day-to-day management of the Bi-State Jail pursuant to a contract with Texarkana, Arkansas; Bowie County, Texas, and Texarkana, Texas.

22.    Pursuant to that contract, LaSalle is required to incarcerate, inter alia, inmates and pretrial detainees "pursuant to contracts between" LaSalle and Texarkana, Texas and/or Bowie County, Texas.

23.    LaSalle and LaSalle Management are required to ensure that the detention of all inmates and pretrial detainees at the Bi-State Jail is done in accordance with Texas Minimum Jail Standards, the United States Constitution, and all other applicable laws.

24.    LaSalle's duties under the contract specifically obligate LaSalle to provide:

      all operation and management services, and all staffing, record keeping, programs, supervision, training, security, prisoner care,

inmate services, and other services and tangible things needed to operate and manage the facility in compliance with the standards, regulations and requirements of the Texas Commission for Jail Standards, applicable federal or state law, and the requirements of the prisoner housing contracts with contracting authorities.

25.    Pursuant to the contract, LaSalle is required to carry liability insurance, with the contract specifically stating that any such insurance must include a "violation of civil rights" endorsement.

26.    LaSalle is required, per the contract, to:

bind itself to defend, hold harmless and indemnify the county, county officials and employees and the agent and representative of the county from and against any and all claims, damages, losses, costs, assessments, penalties, attorney's fees and/or expenses of any kind that arise or result from, or allege to arise or result from, any negligent or wrongful act, or failure to act, or policy or custom of [LaSalle] or its officers, employees, agents, contractors and/or third parties.

27.    The contract further mandates that "all employees of [LaSalle] are considered employees of [LaSalle] for all purposes and are not employees of" Texarkana, Texas.

28.    LaSalle is also required under the contract to maintain a contract with a licensed medical doctor at all times relevant to this Complaint. LaSalle maintained a contract with Dr. Jagdeesh Shah of Bonham, Texas for medical services at the Bi-State Jail. Bonham, Texas is roughly 135 miles from Texarkana, Texas.

29.    Pursuant to LaSalle policies and procedures, all LaSalle employees are empowered to refer an inmate or detainee for outside emergency medical treatment and to summon an ambulance or EMTs. They are also required by the Fourteenth Amendment to the United States Constitution to do so.

30.   On July 17, 2018, at approximately 9:30 p.m. Plaintiff was arrested by the Texarkana, Texas Police Department ("TTPD") and charged with "walking in the roadway," a Class C misdemeanor. Ironically, Class C misdemeanors are punishable only by a fine, and do not subject a citizen to confinement in jail if convicted.

31.   Plaintiff was transported by TTPD to the Bi-State Jail. At the time TTPD handed Plaintiff over to LaSalle employees on the fourth floor of the Bi-State Justice Building, Plaintiff had sustained no physical injuries. Plaintiff had not resisted arrest and there was no use of force by TTPD in connection with his arrest.

32.   After the intake process Plaintiff was placed in K-Pod, a unit for male detainees located in the Bi-State Jail and physically in the state of Arkansas. A correctional officer videotaped the move with a handheld camera. Plaintiff requested copies of the handheld camera footage, but none was provided. LaSalle records reflect that between that time and 4:45 a.m. correctional officers conducted required face to face checks on Plaintiff, noting only that he was breathing or that movement was detected.[1]

33.   Correctional staff failed to make the required 30 minute face to face checks on Plaintiff between 4:54 a.m. and 5:48 a.m., some 54 minutes. Failure to conduct face to face checks every 30 minutes is a violation of Texas State Jail Standards and LaSalle policy.

34.   At approximately 5:15 a.m. correctional staff moved Plaintiff from K-Pod to Medical Observation Cell 2. That move was videotaped with a handheld camera. No handheld camera footage or audio have been provided to Plaintiff.

---

1     State minimum jail standards required that all detainees housed in cells by themselves be checked "face to face" by correctional staff at least once every thirty (30) minutes.

35.    After being placed in the medical observation cell Plaintiff sustained a severe physical beating and numerous blunt force injuries, including multiple facial fractures, a fractured nose, fractured ribs and a serious injury to his colon. Promptly and properly treated, these injuries would heal. However, left untreated, these injures could (and did) lead to a multitude of dangerous conditions, or even death.

36.    LaSalle records reflect that three attempts to conduct face to face checks of Plaintiff in his K-Pod cell occurred between 4:54 a.m. and 7:00 a.m. on July 18, 2018.  During that two-hour period, correctional officers made entries that Plaintiff was "absent - not assigned". Only LaSalle correctional staff had the capability to remove Plaintiff from his K-Pod cell and move him to any other location in the jail. Likewise, Plaintiff could not be exposed to other inmates unless a LaSalle personnel caused such exposure.

37.    According to LaSalle records, Plaintiff remained in Medical Observation Cell 2 until approximately 12:13 p.m. During those hours LaSalle records reflect that Plaintiff was checked by the medical department at 9:55 a.m., 10:03 a.m., 11:18 a.m., 11:43 a.m. and 12:13 p.m. The nurses on duty at the Bi-State Jail are only required to conduct one face to face check of detainees in medical observation cells (5:00 a.m. for day shift). No progress notes or other medical records were generated by LaSalle medical staff concerning Plaintiff's condition during the 5 hour 13 minute period of time Plaintiff was housed in Medical Observation Cell 2. Additionally, there is no evidence that Plaintiff received any medical assessment or medical treatment while housed in Medical Observation Cell 2. There is likewise no indication that Plaintiff's vital signs were ever taken during his time in medical observation. Nursing staff violated LaSalle policies failing to inform the medical director that

Plaintiff had been placed in medical observation. There is a fixed camera in the medical observation cell. Plaintiff requested, but has not been provided with that video footage.

38.    At approximately 12:25 p.m. on July 18, 2018, Plaintiff was removed from medical observation and transferred to a cell in L-Pod, where he remained until approximately 1:10 p.m. the following day. L-Pod is also a male unit located on the Arkansas side of the Bi-State Jail. Only LaSalle correctional staff have the capability to move detainees from medical observation to a cell pod. During that 24 and one-half hour period of time, Plaintiff was checked at least twice by LaSalle medical staff. At approximately 6:34 p.m. and 6:59 p.m. on July 18, 2018, Plaintiff was checked by Defendant Slimak-McFaul, an LVN assigned to the Bi-State Jail. Despite the fact that Plaintiff was suffering from serious and obvious injuries sustained in the beating, Defendant Slimak-McFaul made no notations to Plaintiff's medical file and rendered no treatment to Plaintiff. Defendant Slimak-McFaul also failed to contact Nurse Supervisor/Health Services Administrator Arnold or Medical Director Shah about Plaintiff's injuries. She also failed to arrange for Plaintiff to be transported to a hospital for advanced medical treatment of his injuries. LVNs are merely gatekeepers without authority to diagnose conditions or direct treatment. Registered nurses may make a "nursing" diagnosis, but neither an LVN nor an RN can direct treatment. Plaintiff's injuries required the attention of a medical doctor. No doctor was informed of Plaintiff's condition or consulted about appropriate treatment. Slimak-McFaul failed to notify the medical director that Plaintiff was in medical observation, a violation of LaSalle policies.

39.    LaSalle records reflect that during the next 12 hours Plaintiff was repeatedly observed, for the most part, lying naked on the floor of his cell. Still no medical intervention took place.

40.     On July 19, 2018, at 6:06 a.m. Plaintiff was checked by Markesha Jones, an LVN assigned by LaSalle to work at the Bi-State Jail. Despite having been seriously injured in the beating, Jones failed to conduct any assessment of Plaintiff or provide treatment for his injuries. She also failed to contact either the nurse supervisor/health services administrator or the medical director concerning Plaintiff's injuries, and failed to arrange for Plaintiff to be transported to a hospital for advanced medical treatment of his injuries. Like Defendant Slimak-McFaul, Defendant Jones was without authority to diagnose medical conditions. Defendant Slimak-McFaul also failed again to inform the medical director that Jones was in medical observation.

42.     For the next 7 hours Plaintiff was repeatedly observed lying naked on the floor of his cell.

43.     On the morning following his arrest on July 18, 2018, Plaintiff completed a medical questionnaire, which noted that he suffered from diabetes and hypertension. LaSalle policy required the nursing staff to initiate blood sugar monitoring and blood pressure logs and to regularly check Plaintiff's blood sugar and blood pressure. LaSalle's medical staff failed to initiate a blood sugar monitoring log or blood pressure log, and there is no evidence that medical staff ever check Plaintiff's vital signs even after he was placed in medical observation, severely beaten, and lay naked on the floor of his cell for the better part of a day and a half. No one at the jail made any attempt to provide Plaintiff with water or food. Plaintiff was suffering from severe dehydration and acute kidney failure by July 19, 2018.

44.     By mid-morning on July 19, 2018, a decision was made to release Plaintiff rather than arrange transport to the hospital where his injuries could be properly treated.

45.     On the morning of July 19, 2018, Plaintiff's sister, Melody Jones Dunn, was frantically

attempting to see Plaintiff. She contacted the Bi-State Jail at approximately 11:00 a.m. and was informed that Plaintiff was housed in the jail, but would be released in 3-4 hours. Ms. Dunn asked to speak with a LaSalle sergeant, who informed her that Plaintiff could speak, but was having a hard time communicating. Plaintiff's sister was alarmed by this report, as Plaintiff was in generally good health before his arrest.  Ms. Dunn arrived at the Bi-State Jail at 12:20 p.m. and inquired as to how much longer it would take for Plaintiff to be released. At some point Nurse Tiffany Venable, a LaSalle employee, entered the lobby. Ms. Dunn asked if she had treated Plaintiff to which Venable responded, "I'm a supervisor, I ain't seen no one." Ms. Dunn explained who she was waiting for and Venable said she would check, but left and never returned.

46.    At approximately 12:40 p.m. on July 19, 2018, Defendant Markesha Jones conducted a limited assessment of Plaintiff. She noted only that Plaintiff "appears under the under the influence, stumbling/staggering" and that Plaintiff was "able to respond to name." She further noted that Plaintiff complained of "pain to the ribs from previous injury" and that he had no "swelling or bruising." At that time Defendant Jones also noted that Plaintiff's right eye was "swollen & black" but that Plaintiff "denies any pain or injury" to his right eye. Lastly, Defendant Jones noted that Plaintiff was "in process of completing release @ this time. Ø further eval. @ this time." In other words, Defendant Jones noted Plaintiff's right eye was black and swollen shut and he was complaining of rib pain. Again, no vitals were taken and no medical treatment was provided to Plaintiff. Likewise, no advanced outside medical help was summoned by LaSalle, and neither the HSA nor medical director were contacted. In fact, the complete lack of medical assessment and treatment had resulted in Plaintiff

developing pneumonia, rhabdomyolisis, severe dehydration, acute kidney failure and sepsis. Had defendants taken any steps to monitor and treat Plaintiff these conditions would not have developed.

47.     At approximately 2:45 p.m. Plaintiff's sister received a call from a LaSalle sergeant stating Plaintiff was about to be released and that it would be 10-15 more minutes because they had to get Plaintiff dressed. Ms. Dunn asked the sergeant whether Plaintiff needed medical assistance and the sergeant responded, "Yes." Upon hearing that her brother was unable to dress himself, Ms. Dunn immediately decided to call an ambulance. She called 911 and LifeNet dispatched an ambulance to the public entrance at the Bi-State Jail. Shortly thereafter, LaSalle personnel wheeled Plaintiff out in a restraint chair. Plaintiff was barely able to speak and was begging for water and moaning in pain. The fact that Plaintiff was in serious medical distress was obvious, even to lay persons.

48.     EMTs from LifeNet immediately assessed Plaintiff in the jail lobby. They were unable to start an IV due to Plaintiff's severe dehydration. His blood pressure was dangerously low and he was scored a 9 on the Glasgow Coma Scale. Dried blood was also noted in his nostrils.

49.     LifeNet personnel transported Plaintiff directly from the public lobby of the Bi-State Jail to Wadley Regional Medical Center, where he was hospitalized for almost a month and diagnosed with the following conditions:

•        acute renal failure

•        severe dehydration

•        ischemic colitis caused by blunt force trauma

•        multiple facial fractures

- multiple rib fractures

- rhabdomyolysis (muscle loss resulting from the delay in receiving medical treatment)

- sepsis

- pneumonia

- blood clots

- hyperkalemia (dangerously high potassium resulting from the delay in receiving treatment)

As noted above, the only medical record generated by LaSalle from July 17 - July 19, 2018, was the limited assessment that occurred only a couple of hours before Plaintiff was rushed to the hospital by his sister and LifeNet. According to that record, Plaintiff needed "Ø further evaluation at this time." In reality, Plaintiff was near death when Defendants attempted to side step their obligation to get Plaintiff to the hospital and simply "release" him to his sister.

50.    Once at Wadley Regional Medical Center, Plaintiff was placed on a ventilator for an extended period of time, as well as on dialysis. He also underwent surgery to determine the extent of bowel damage he sustained during the beating and made worse by Defendants' failure to assess or treat Plaintiff over the course of two days. Surgeons found that a large portion of Plaintiff's sigmoid and transverse colon was infected and gangrenous. A large section of his colon was surgically removed and he now wears a permanent ostomy bag. Plaintiff's severe medical complications were a result of Defendants' failure to provide him any meaningful medical assessment or treatment for his injuries. In addition to his physical injuries, Plaintiff suffers from major depression and post-traumatic stress disorder. Plaintiff has been unable to return to his previous job as a welder. Plaintiff's medical expenses total in excess of $1 million at this point.

51.    Unfortunately, the LaSalle Defendants have a disturbing but well documented track record of failing to meet the serious medical needs of pretrial detainees. See *Sabbie v. Southwestern Correctional, LLC*, (No. 5:17CV113) and *Leigh v. Southwestern Correctional, LLC* (No. 5:16CV129). Detainee Michael Sabbie died in July of 2015 as a result of the LaSalle Defendants' abject failure to respond to his serious medical needs. Morgan Angerbauer died in July of 2016 at the Bi-State Jail because nursing staff repeatedly failed to follow protocols and actually refused to check Angerbauer's blood sugar, which was known to be dangerously high. Angerbauer died of diabetic ketoacidosis because nursing staff refused to give her insulin. One of LaSalle's nurses was convicted on negligent homicide in connection with Angerbauer's death.

52.    LaSalle correctional staff falsified jail records in both death cases (*Sabbie* and *Angerbauer*), stating that required 30 minute face to face checks had been done when in fact they had not. Likewise, in both cases nursing staff falsified jail records and fabricated a false time line in a feeble attempt to avoid responsibility for those deaths. Falsification of jail records is a felony in the state of Texas. At least two witnesses testified that LaSalle literally trained and instructed correctional officers at the Bi-State Jail not to conduct the required checks and to falsify detainee check records. (See *Sabbie*, ECF No. 122, p. 51-54.) LaSalle also falsified correctional officer training records at the Bi-State Jail.

53.    These widespread patterns and practices extend beyond Bowie County. For example, in 2015 and 2016 two detainees died in a LaSalle operated jail in McLennan County, Texas. In both cases LaSalle jail staff failed to conduct the required checks and falsified inmate/detainee check records. At least one LaSalle guard admitted to police that he was instructed to falsify

the records and that the facility was understaffed. Four LaSalle guards were charged criminally in those cases for falsifying jail records.

54.    Between 2016 and 2018 the Texas Commission on Law Enforcement ("TCOLE") found that LaSalle had engaged in a persistent pattern of falsifying training records. TCOLE secured sworn statements from more than a dozen LaSalle correctional officers at LaSalle's Parker County Jail confirming that they did not receive much of the training reported to TCOLE.

55.    In December of 2017 a detainee died in custody at the Parker County LaSalle facility. Investigators with the Texas Rangers secured admissions from LaSalle staff at that facility that they do not conduct the required face to face checks unless they hear something out of the ordinary.

56.    All these practices were widespread and in place long before Plaintiff was arrested in July of 2018. Worse still, they continue unabated. In March of 2019 yet another detainee died while in custody at the Bi-State Jail. Yet again state investigators found that LaSalle staff was not conducting the required 30 minute face to face checks on detainees, including the gentleman who died. For reasons known only to LaSalle, its employees **still** routinely refuse to comply with state law and company policy when it comes to conducting detainee checks, and **still** routinely falsify jail records to indicate they are conducting checks when they are not. These abuses go unnoticed by state authorities until a detainee dies in custody and observation logs are checked against surveillance video footage.

57.    Within a week of Plaintiff being transferred from the Bi-State Jail to Wadley Regional Medical Center, the undersigned submitted an open records request and evidence preservation letter to Bowie County and the LaSalle Defendants requesting that all records

and surveillance footage from Plaintiff's incarceration the previous week be preserved and produced. LaSalle responded that there was no available footage and LaSalle had no knowledge of Plaintiff's beating or any other "incident" involving Plaintiff. This makes no sense as Plaintiff could not be moved within the jail or exposed to other detainees unless LaSalle correctional staff effectuated and supervised the move. After this action was filed Defendants ultimately produced limited video footage from fixed cameras on the night of July 17 and early morning of July 18, 2018. No fixed camera footage from the medical observation cell, hallways, L-Pod or booking/release area from July 18-19, 2018, has been produced. No handheld camera footage has been produced.

58.    Plaintiff underwent a security classification assessment on July 18, 2018. He was categorized as a minimum security risk. Placing him in housing with detainees classified as "medium" or "maximum" security risk assessments violated Texas State Jail Minimum Standards and LaSalle policy.


ADDITIONAL FACTS APPLICABLE TO LaSALLE DEFENDANTS

59.    The unconstitutional conduct in question was carried out in accordance with the official policies, procedures, practices and customs of the LaSalle Defendants.

60.    The LaSalle Defendants engaged in and permitted to exist a pattern, practice or custom of unconstitutional conduct towards detainees and inmates with serious medical needs, including denying prescription medication and failing to secure medical care for such individuals. Before (and since) Plaintiff's detention, there have been numerous instances in the Bi-State Jail (and in other correctional facilities managed by LaSalle) of inmates being

denied medications and deprived of needed medical care by LaSalle and its agents or employees, resulting in disability and/or death. For example, in June of 2019 Holly Barlow Austin was a detainee at the Bi-State Jail. She was HIV positive and required multiple daily medications. These medications were not provided to her while in custody as required, and Austin's condition deteriorated until she was blind, unable to walk, and near death. She was finally transported to Wadley Regional Medical Center, where she subsequently died. Similarly in October of 2020, Raymond Larry Cole, at 72 years of age, was booked into the Bi-State Jail on charges of animal cruelty. Cole's pituitary gland had been removed years earlier and he required multiple daily medications to treat that condition. Despite being informed of this at booking/intake and being provided with the medications by Cole's spouse, jail staff refused to give the medication to Cole, who was subsequently found unresponsive and taken to Wadley Regional Medical Center, where he subsequently died.

61.    As noted above, less than one year prior to the death of Morgan Angerbauer, the LaSalle Defendants failed to conduct blood pressure checks and blood sugar tests leading to the death of Michael Sabbie who, like Angerbauer, was a diabetic.[2] Even after the death of Sabbie, the LaSalle Defendants continued in their pattern of misconduct and failure to meet the medical needs of insulin-dependent diabetics, including Angerbauer. LaSalle also failed to make any changes to its practices, procedures and customs for treating diabetic inmates/detainees. No steps were taken to correct the nursing staff's failure to follow written medical protocols and failure to meet nursing standards of care. Incredibly, no internal review of LaSalle's

---

2       See *Sabbie v. Southwestern Correctional, LLC, et al*, No. 5:17CV113.

deplorable medical practices leading to the death of Sabbie was undertaken. The practices continued and Angerbauer died less than one year after Sabbie.

62.   These unconstitutional policies, procedures and practices continue even after the death of Angerbauer. In April of 2018 a detainee in the Bi-State Jail suffered a stroke. Despite repeated pleas for help by other detainees, trustees and family members of the stroke victim, LaSalle personnel, including the nurses on duty, failed to provide any treatment or call an ambulance for approximately 24 hours, again exhibiting a total disregard for the medical needs of detainees. As recently as March of 2019 another detainee died at the Bi-State Jail. State investigators found that LaSalle Defendants **still** fail to conduct mandated face to face checks and **still** falsify jail records to reflect that the required checks are being conducted.

63.   The failure to secure medical care for Plaintiff was motivated by constitutionally impermissible profit-driven reasons. The LaSalle Defendants had a policy, practice and custom of budgeting and spending inadequate amounts on jail medical care to make higher profits under their contract. The LaSalle Defendants also habitually understaffed its facilities. It was foreseeable that the insufficient jail medical budgeting and spending and inadequate staffing would once again cause harm to inmates/detainees in need of medical care.

64.   The LaSalle Defendants also had a pattern, practice and custom of failing to properly monitor inmates and detainees with serious medical and/or mental health issues. This includes a practice of failing to conduct 30-minute face to face checks mandated by the Texas Commission on Jail Standards and internal policies. The commission cited the Bi-State Jail for failing to comply with these mandated checks shortly after the death of Sabbie in 2015, again after the death of Angerbauer in 2016, and yet again after the detainee death in March

of 2019. Other facilities operated by LaSalle have been written up for similar non-compliance. In addition, LaSalle corrections officers in Texas have engaged in a pattern of falsifying documents, indicating they conducted such checks when in fact they did not. LaSalle corrections officers have been arrested following the death of other inmates for falsifying documents to make it appear that they conducted mandated headcounts when they in fact did not do so.

65.     The LaSalle Defendants failed to adequately train their personnel on recognizing and responding to the serious medical needs of inmates/detainees. The need for this training was obvious because LaSalle hired detention staff with little or no corrections experience, and it was foreseeable that the lack of such training would cause harm to inmates/detainees. These correctional officers are responsible for conducting the face to face checks of detainees, including those in medical observation cells, despite the fact that correctional staff is provided absolute no medical training. The LaSalle Defendants also failed to train their corporate nursing staff on how to conduct adequate medical examinations and notify the nurse supervisor and/or medical director of abnormal findings. The LaSalle Defendants also failed to train their corporate nursing staff concerning contacting emergency medical services in a timely manner when an inmate/detainee becomes unresponsive. The need for this training was obvious because LaSalle staffed the Bi-State Jail with licensed vocational nurses rather than registered nurses, and it was foreseeable that such training deficiencies would cause harm to inmates/detainees (and in fact had previously resulted in the deaths of at least two detainees at the Bi-State Jail).

66.     The corporate policies, practices and customs described above were the moving force behind

Plaintiffs's suffering, as well as the constitutional violations alleged herein. The LaSalle Defendants also ratified the unconstitutional conduct of their employees and agents with respect to the detention and death of Plaintiff. LaSalle completely failed to conduct any inquiry or even document what happened to Plaintiff during his incarceration.

67.     All acts and omissions committed by the LaSalle Defendants were committed with intent, malice and/or with reckless disregard for Plaintiff's federal constitutional rights. Moreover, the LaSalle Defendants either (a) intentionally pursued a course of conduct for the purpose of causing injury, or (b) knew or should have known that their conduct would naturally and probably result in injury or damages and, nevertheless, continued the conduct with malice, deliberate indifference and reckless disregard of the consequences.

68.     The LaSalle Defendants had a duty to treat Plaintiff in accordance with the applicable standards of medical and correctional care. The LaSalle Defendants breached those duties and Plaintiff's damages, including his pain and suffering, were the direct and foreseeable result of the tortious action and inactions of the LaSalle Defendants alleged herein.

69.     Multiple state and local investigations have concluded that LaSalle employees pre-completed cell check logs at the Bi-State Jail. This case presents yet another example of the LaSalle Defendants' pattern, practice and custom of falsifying records and tragically destroying the health and/or life of a Texas citizen not convicted of the crime for which he was detained.

## ADDITIONAL FACTS APPLICABLE TO MUNICIPAL DEFENDANTS

70.     Defendant Bowie County delegated its final policy-making authority to the LaSalle Defendants. Despite this, Bowie County has a continuing duty to ensure that its corporate

policy makers were meeting the constitutional needs of its inmates/detainees. Bowie County adopted and ratified the policies, customs and practices of the LaSalle Defendants as its own. As such, Bowie County is liable for any unconstitutional corporate policies, customs or practices that resulted in harm to any inmates/detainees confined in the Bi-State Jail, including the unconstitutional policies, customs and practices of the LaSalle Defendants that caused Plaintiff's injuries. It was foreseeable that such policies, customs and practices would once again put the lives of inmates/detainees of the Bi-State Jail at risk, and such policies, customs and practices caused and/or substantially contributed to his injuries.

71.     Defendant City of Texarkana, Texas delegated its final policy-making authority to the LaSalle Defendants. Despite this Defendant City of Texarkana, Texas had a continuing duty to ensure that its corporate policy makers were meeting the constitutional needs of its inmates/detainees. Defendant City of Texarkana, Texas adopted and ratified the policies, customs and practices of the corporate defendants and its own. As such, Defendant City of Texarkana, Texas is liable for any unconstitutional corporate policies, customs and practices that resulted in harm to any inmate/detainee confined in the Bi-State Jail, including the unconstitutional policies, customs and practices of the LaSalle Defendants that caused Plaintiff's injuries. It was foreseeable that such policies, customs and practices would once again put the lives of Bi-State Jail inmates/detainees at risk, and such policies, customs and practices caused and/or substantially contributed to Plaintiff's injuries.

72.     All Defendants, individually and in concert, had knowledge of and were deliberately indifferent to:

   a.     The ongoing pattern and practice of inmate/detainee injuries and deaths due to lack

of proper medical attention at the Bi-State Jail, which have occurred both before and since Plaintiff's incarceration;

b.    The ongoing failure to implement adequate policies, guidelines and procedures - and adequate training in the implementation of existing policies, guidelines and procedures - to reasonably ensure the safety of detainees who suffered from a medical emergency while in custody;

c.    The failure to following existing policies, guidelines and procedures regarding the medical needs of inmates/detainees during the time that Plaintiff was detained;

d.    The failure to provide necessary and adequate medical treatment for inmates/detainees who suffer from a medical emergency;

e.    The failure to properly monitor the personnel within the Bi-State Jail to ensure that all personnel were performing their assigned tasks in a manner that did not violate the rights of inmates/detainees;

f.    The failure to ensure that Bi-State Jail medical personnel were trained in addressing medical emergencies in a medically appropriate manner, including prompt referrals to the emergency room when necessary;

g.    The failure to correct known deficiencies in the Bi-State Jail's operations so that the jail complied with all required minimum standards; and.

h.    The failure to adequately staff the Bi-State Jail and other LaSalle operated jails.

73.    Pursuant to the contract for operation of the Bi-State Jail, the LaSalle Defendants also undertook an affirmative duty to train its employees to prevent injury, death and/or violations of the rights of inmates/detainees.

74.    The LaSalle Defendants failed to provide proper training to Defendants Slimak-McFaul and Markesha Jones in the appropriate response to Plaintiff's medical condition as demonstrated by their complete failure to assess Plaintiff's condition, contact the nurse supervisor or medical director, and their participation in the attempt to "dump" Plaintiff on his sister.

75.    The LaSalle Defendants negligently failed to provide proper training to Defendant Arnold in the appropriate manner of supervision of other nurses at the Bi-State Jail, as well as when to refer an inmate/detainee to outside medical care, as demonstrated by Arnold's complete failure to supervise Defendants Slimak-McFaul and Jones from July 17 - July 19, 2018, and Arnold's complete failure to refer Plaintiff to outside medical treatment following his beating.

76.    The LaSalle Defendants negligently failed to provide proper training to Warden James McCormick in the appropriate manner of operating and overseeing a jail facility, as demonstrated by McCormick's complete failure to ensure that the jail was adequately staffed, and that Defendants Arnold, Slimak-McFaul and Jones understood proper day-to-day medical protocol so as to avoid an unnecessary risk of injury or death to inmates/detainees, especially after the deaths of Michael Sabbie and Morgan Angerbauer.

77.    The LaSalle Defendants negligently failed to provide proper training to Warden James McCormick regarding the importance of correctional staff actually conducting state mandated detainee checks and not falsifying their activity logs, as demonstrated by the continued practice of doing so as recently as March of 2019.

78.    The failure of the LaSalle Defendants to properly train Defendants Arnold, McCormick, Slimak-McFaul and Jones renders them directly liable to Plaintiff for their own action or

inaction.

79.    The LaSalle Defendants  negligently contracted with a doctor who was located over a two-hour drive away from the Bi-State Jail; did not oversee medical treatment at the Bi-State Jail in any meaningful way; did not have control or supervisory ability over any of the nursing staff at the Bi-State Jail; and was inadequate to fulfill the requirement that the LaSalle Defendants maintain a contract with a doctor for medical care at the Bi-State Jail.

80.    The negligence of the LaSalle Defendants as detailed in the preceding paragraphs was a direct and proximate cause of Plaintiff's injuries, as proper training of Defendants Arnold, McCormick, Slimak-McFaul and Jones, as well as contracting with a doctor who could actually provide oversight and medical care, would have prevented Plaintiff's injuries.

81.    As a result of the negligence of the LaSalle Defendants, Plaintiff suffered compensable damages in the form of pain and suffering, personal injury, medical expenses, lost wages, loss of earning capacity and mental anguish.

## ADDITIONAL FACTS APPLICABLE TO INDIVIDUAL DEFENDANTS

82.    Defendant Eason was, at all times relevant to this Complaint, tasked with overseeing and directing operations of all LaSalle jail units in the state of Texas. Defendant Eason was required to follow all jail policies and procedures and state mandated jail standards.

83.    Defendant McCormick was, at all times relevant to this Complaint, tasked with overseeing operations, including the training and supervision of Bi-State Jail staff. Defendant McCormick was responsible for seeing to it that the Bi-State Jail operated in compliance with constitutional and state law mandates concerning the monitoring, assessment and

treatment of detainees/inmates with serious medical conditions.

84.    Defendant Arnold was, at all times relevant to this Complaint, tasked with supervising and training nursing staff, including Defendants Slimak-McFaul and Jones, and ensuring that all inmates/detainees at the Bi-State Jail received proper and adequate medical attention, including referral to emergency medical attention through the prompt notification of supervisory employees and 911. Defendant Arnold, as a licensed health care professional, the health services administrator for the Bi-State Jail and an employee of LaSalle, was required to follow all jail policies and procedures regarding medical assessments, treatments, and interaction with inmates/detainees with serious medical conditions. Defendant Arnold was further required to abide by all nursing rules, procedures, regulations, and guidelines in treating Plaintiff.

85.    Defendant Slimak-McFaul was, at all times relevant to this Complaint, tasked with observing inmates/detainees in the medical observation cells and elsewhere in the Bi-State Jail, and ensuring that all inmates/detainees received proper and adequate medical attention, including referral to emergency medical providers through the prompt notification of supervisory employees and 911. Defendant Slimak-McFaul, as a licensed health care professional and employee of LaSalle, was required to follow all jail policies and procedures regarding medical emergencies, interaction with inmates/detainees who suffered from serious medical conditions, and administration of medications. Defendant Slimak-McFaul, as a licensed health care professional, was further required to abide by all nursing rules, procedures, regulations, and guidelines in assessing and treating Plaintiff.

86.    Defendant Jones was, at all times relevant to this Complaint, tasked with observing

inmates/detainees in the medical observation cells and elsewhere in the Bi-State Jail, and ensuring that all inmates/detainees received proper and adequate medical attention, including referral to emergency medical providers through the prompt notification of supervisory employees and 911. Defendant Jones, as a licensed health care professional and employee of LaSalle, was required to follow all jail policies and procedures regarding medical emergencies, interaction with inmates/detainees who suffered from serious medical conditions, and administration of medications. Defendant Jones, as a licensed health care professional, was further required to abide by all nursing rules, procedures, regulations, and guidelines in assessing and treating Plaintiff.

87.   Defendants Jane Does #1-10 were required to follow all policies and procedures regarding the health care, medical emergencies, observation and documentation of inmates/detainees.

88.   Defendants John Does #1-10 were required to follow all policies and procedures regarding the health care, medical emergencies, observation and documentation of inmates/detainees.

89.   At the time Defendants Slimak-McFaul and Jones interacted with Plaintiff on July 18 and 19, 2018, they knew or should have known through reasonable efforts that Plaintiff was suffering from serious physical injuries and exhibiting obvious symptoms of medical distress, and that refusing to contact their superiors or arrange for medical treatment and/or advanced medical services from outside the jail amounted to gross negligence.

90.   Defendants Arnold and McCormick violated Plaintiff's civil rights as follows:

   a.   They were aware of repeated failures to provide for the serious medical needs of inmates/detainees and took no adequate steps to address these failures; and

   b.   They were aware of the need to properly train Bi-State Jail nurses and correctional

staff and failed to provide such training to such an extent that Bi-State Jail nurses and correctional staff were wholly unfamiliar with how to address Plaintiff's serious medical needs.

91.    Defendant Eason violated Plaintiff's civil rights as follows:

    a.    He was aware of repeated failures to provide for the serious medical needs of inmates/detainees in LaSalle units throughout the state of Texas and took no adequate steps to address these failures;

    b.    He was aware of the widespread custom, practice and policy of failing to conduct required face to face inmate/detainee checks and the falsification of jail records to reflect that checks were made when in fact they were not; and

    c.    He was aware of the need to properly train Bi-State Jail nurses and correctional staff, and failed to provide such training to such an extent that Bi-State Jail nurses and correctional staff were wholly unfamiliar with how to address Plaintiff's serious medical needs.

92.    Defendant Slimak-McFaul violated Plaintiff's constitutional rights by refusing to provide appropriate medical assessment, medical attention or report Plaintiff's condition to the nurse supervisor or medical director, even though Plaintiff's injuries were obvious and apparent. The failure to provide adequate medical assessment and secure advanced medical treatment amounts to a deprivation of liberty without due process in violation of the Fourteenth Amendment.

93.    Defendant Jones violated Plaintiff's constitutional rights by refusing to provide appropriate medical assessment, medical attention or report Plaintiff's condition to the nurse supervisor

or medical director, even though Plaintiff's injuries were obvious and apparent. The failure

to provide adequate medical assessment and secure advanced medical treatment amounts to

a deprivation of liberty without due process in violation of the Fourteenth Amendment.

94.    Defendants Jane Does #1-10 and John Does #1-10 violated Plaintiff's constitutional rights

by failing to provide any medical attention to him or refer him to an emergency room when

it became clear that Defendants Slimak-McFaul and Jones were not providing proper medical

attention. This failure to provide medical attention amounts to a deprivation of liberty

without due process in violation of the Fourteenth Amendment.

95.    Defendants Eason, McCormick, Arnold, Slimak-McFaul, Jones, Jane Does #1-10 and John

Does #1-10, by virtue of their employment with LaSalle while acting in furtherance of their

course and scope of employment or business relationship with LaSalle, which includes

contractual duties owed to all inmates and detainees, had a duty to Plaintiff to ensure that he

received medical attention and that he was not exposed to undue risk of harm or injury.

96.    Defendant Arnold, while acting in furtherance of her course and scope of employment or

business relationship with LaSalle, breached this duty by failing to refer Plaintiff to an

emergency room on July 18, 2019 after Plaintiff was severely beaten; by refusing to provide

medical attention to Plaintiff on July 19, 2019; by allowing staff to "dump" Plaintiff on his

family; and by inadequately staffing the jail.

97.    Defendants Slimak-McFaul and Jones, while acting in furtherance of their course and scope

of employment or business relationship with LaSalle, breached this duty by failing to provide

any medical assessment of or treatment to Plaintiff on July 18 and 19, 2019; by not reporting

Plaintiff's physical condition to their supervisors; and by failing to secure outside medical

treatment for Plaintiff.

98.    Defendant McCormick also breached his duty to Plaintiff by failing to adequately train and supervise medical and correctional staff in how to monitor, assess and secure treatment for inmates/detainees; by allowing Plaintiff's injuries to go untreated for a day and a half; by not securing advanced outside medical treatment for Plaintiff; and by understaffing the jail.

99.    Defendant Eason, while acting in furtherance of his course and scope of employment or business relationship with LaSalle, had a duty to ensure that employees at the Bi-State Jail did not negligently undertake actions that were likely to injure Plaintiff. Defendant Eason breached his duties by failing to put in place adequate procedures for assessment and treatment of injured inmates/detainees; by failing to adequately train and supervise medical and correctional staff at the Bi-State Jail; and by understaffing the jail.

100.    The breach of these duties described herein above was an actual and proximate cause of Plaintiff's damages.

101.    The LaSalle Defendants, as employers of the other named Defendants, may be held liable for the actions or inactions of the other Defendants under a common law theory of respondeat superior or vicarious liability, as the individual defendants were working under the employ and control of the LaSalle Defendants for the benefit of the LaSalle Defendants and within the general scope of their employment with the LaSalle Defendants.

102.    As a result of this negligence, Plaintiff suffered compensable damages in the form of physical pain and suffering; mental aguish; medical expenses (past and future); lost wages; loss of earning capacity; and scarring/disfigurement.

<u>CAUSES OF ACTION</u>

<u>LaSALLE DEFENDANTS</u>

    A.  <u>42 U.S.C. § 1983</u>

103.    Based on the allegations in this Complaint, the LaSalle Defendants are liable under 42 U.S.C. § 1983 for violating the Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution. This includes depriving Plaintiff of his Fourteenth Amendment right to adequate medical care, food and water.

    B.  <u>Arkansas Civil Rights Act</u>

104.    Based on the allegations in this complaint, the LaSalle Defendants are also liable under the Arkansas Constitution - giving rise to a claim under the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105.

<u>MUNICIPAL DEFENDANTS</u>

    A.  <u>42 U.S.C. § 1983</u>

105.    Based on the allegations in this Complaint, the Municipal Defendants (Bowie County and City of Texarkana, Texas) are liable for tortiously causing the injuries to Plaintiff by violating the applicable correctional and medical standards of care, and by violating Article 2, Sections 8 and 15 of the Arkansas Constitution - giving rise to a claim under the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105.

    B.  <u>Arkansas Civil Rights Act</u>

106.    Based on the allegations set forth in this complaint, the Municipal Defendants are liable for tortiously causing Plaintiff's injuries by violating the applicable correctional and medical

standards of care, and by violating Article 2, Sections 8 and 15 of the Arkansas Constitution - giving rise to a claim under the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105.

INDIVIDUAL DEFENDANTS

    A.   42 U.S.C. § 1983

107.   Based on the allegations in this complaint, all individuals Defendants are liable under 42 U.S.C. § 1983 for violating the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution for depriving Plaintiff of his right to adequate medical care, food and water. Individual liability also extends to supervisory Defendants Arnold, McCormick and Eason for their failure to oversee their subordinates and ensure compliance with correctional standards of care as described in this Complaint.

    B.   Arkansas Civil Rights Act

108.   Based on the allegations set forth in this complaint, the individuals Defendants are liable for tortiously causing Plaintiff's injuries by violating the applicable correctional and medical standards of care, and by violating Article 2, Sections 8 and 15 of the Arkansas Constitution - giving rise to a claim under the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105.

DAMAGES

109.   Plaintiff was 41 years of age at the time of the occurrence in question. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained the following damages:

-   medical expenses in the past in excess of $1 million;

-   future medical expenses;

-   past and future pain, suffering and mental anguish;

- loss of earnings;

- loss of earning capacity;

- scarring, disfigurement and visible results of injury; and

- caretaking expenses.

## PUNITIVE DAMAGES

110.    Defendants knew, or should have known in light of the surrounding circumstances, that their conduct would naturally and probably result in injury and yet continued such conduct with reckless disregard of the consequences from which malice may be inferred. Defendants intentionally pursued a course of conduct for the purpose of causing injury. Accordingly, Plaintiff seeks an award of punitive damages against the LaSalle Defendants and Individual Defendants.

## DECLARATORY RELIEF

111.    Plaintiff seeks a declaratory judgment from the Court concerning Plaintiff's rights and Defendants' liability established by the United States Constitution, the Constitution of the State of Arkansas, and federal and state statutes referenced herein. Specifically, Plaintiff requests this Court to declare that the Municipal Defendants (Bowie County, Texas and City of Texarkana, Texas) have non-delegable duties to operate the Bi-State Jail in a manner that complies with the constitutional and statutory requirements set forth above; and that the Municipal Defendants are therefore liable to Plaintiff for damages sustained as a result of actionable conduct on the part of the non-municipal Defendants as described herein.

## JURY DEMAND

112.    Plaintiff hereby demands a trial by jury.

<u>PRAYER FOR RELIEF</u>

Plaintiff respectfully requests that the Court award him the following relief:

a.      •   medical expenses in the past in excess of $1 million

        •   future medical expenses

        •   past and future pain, suffering and mental anguish

        •   loss of earnings

        •   loss of earning capacity

        •   scarring, disfigurement and visible results of injury

        •   caretaking expenses.

b.      punitive damages against the LaSalle Defendants and Individual Defendants;

c.      declaratory relief as set forth herein above;

d.      attorney's fees and costs;

e.      prejudgment interest as appropriate; and

f.      any such other relief that this Court deems just and equitable.


October 27, 2020                              Respectfully submitted,

                                              */s/ W. David Carter*
                                              W. David Carter, TSB No. 03932780
                                              MERCY ✶ CARTER, L.L.P.
                                              1724 Galleria Oaks Drive
                                              Texarkana, Texas 75503
                                              (903) 794-9419 - Telephone
                                              (903) 794-1268 - Facsimile
                                              wdcarter@texarkanalawyers.com

                                              ATTORNEY FOR PLAINTIFF WILLIAM
                                              SCOTT JONES

## CERTIFICATE OF SERVICE

I, W. David Carter, certify that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).


/s/ *W. David Carter*