## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| WILLIAM SCOTT JONES, | § § § | |
| Plaintiff, | § § § | CIVIL ACTION NO.  5:19-CV-00104-RWS |
| v. | § § § | **SEALED** |
| SOUTHWESTERN CORRECTIONAL, LLC, *et al.*, | § § § § | |
| LaSalle Defendants. | § § | |

## ORDER

Before the Court are Defendants'[1] Motion for Summary Judgment (Docket No. 83) and Plaintiff William Scott Jones's Motion for Summary Judgment as to Declaratory Judgment Claim (Docket No. 64).  Defendants request the Court find that (1) no Defendants are liable under the U.S. or Arkansas Constitutions for inadequate medical care because none drew an inference of substantial risk to or had subjective intent to harm Plaintiff; (2) no Defendants are liable for excessive force under the U.S. or Arkansas Constitutions; (3) supervisory Defendants McCormick and Arnold are not liable under *Monell* for violations of the U.S. or Arkansas Constitutions; (4) Defendant Southwestern Correctional, LLC is not liable under *Monell* for violations of the U.S. or Arkansas Constitutions; (5) Defendant Bowie County has sovereign immunity to negligence and Arkansas Constitution claims; (6) Defendant Texarkana is not directly liable for any claims; (7) Defendant Texarkana is not liable under *Monell*; (8) Defendant Texarkana has sovereign immunity

---

[1] Plaintiff sued Southwestern Correctional, L.L.C. D/B/A LaSalle Corrections, L.L.C. and LaSalle Southwest Corrections; LaSalle Management Company; Bowie County, Texas; City of Texarkana, Texas; James McCormick, individually; Michelle Arnold, individually; Jonie Slimak-McFaul, individually; and Markesha Jones, individually (collectively, "Defendants").

to negligence and Arkansas Constitution claims; (9) Defendant LaSalle Management is not liable under any theory; and (10) no Defendants can be liable for any causes of action alleged by a Texas arrestee based upon Arkansas law.  Plaintiff requests the Court find summary judgment that (1) municipal Defendants Bowie County and Texarkana have a non-delegable duty to provide detainees in the Bi-State Jail with constitutionally adequate medical care and (2) are liable to Plaintiff for damages sustained as a result of any deprivation of Plaintiff's constitutional rights by the non-municipal defendants.  For the reasons listed below, the Court **DENIES** Defendants' motion for summary judgment and **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiff's motion for summary judgment.

## BACKGROUND

Plaintiff's suit arises out of his two-day incarceration in the Bi-State Jail in Texarkana, Texas.  Plaintiff alleges that during his incarceration, he was severely beaten.  Docket No. 49 ¶ 1.  Plaintiff also alleges he was provided no medical care for two days.  *Id.*  Upon release from the jail, Plaintiff was taken to Wadley Regional Medical Center, where he was hospitalized for almost a month.  *Id.* at ¶ 49.  Plaintiff sued Defendants, alleging they were deliberately indifferent to his medical needs, a constitutional violation under 42 U.S.C. § 1983 and the Arkansas Constitution.

Plaintiff was arrested by the Texarkana, Texas Police Department ("TTPD") at approximately 9 p.m. on July 17, 2018, on a charge of "walking in the roadway" and transported to the Bi-State Jail.  *Id.* ¶¶ 30–31.  LaSalle Defendants managed the Bi-State Jail for Texarkana, Arkansas; Bowie County, Texas; and Texarkana, Texas.  *Id.* ¶ 21.  At the time TTPD handed Plaintiff over to LaSalle employees, Plaintiff had sustained no physical injuries—he had not resisted arrest and there was no use of force by TTPD in connection with his arrest.  *Id.* ¶ 31.  After the intake process, Plaintiff was placed in K-Pod, a unit for male detainees located in the Bi-State

Jail and physically in the State of Arkansas. *Id.* ¶ 32. At approximately 5:15 a.m. on July 18, correctional staff moved Plaintiff from K-Pod to Medical Observation Cell 2. *Id.* ¶ 34. At approximately 12:25 p.m., Plaintiff was removed from medical observation and transferred to a cell in L-Pod, where he remained until approximately 1:10 p.m. the following day. *Id.* ¶ 38. L-Pod is also a male unit located on the Arkansas side of the Bi-State Jail. *Id.* At approximately 12:40 p.m. on July 19, Defendant Markesha Jones conducted a limited assessment of Plaintiff as part of the release process. *Id.* ¶ 46. At approximately 2:45 p.m., Plaintiff's sister received a call from a LaSalle employee stating Plaintiff was about to be released. *Id.* ¶ 47. At that time, Plaintiff's sister asked whether Plaintiff needed medical assistance and the employee responded in the affirmative; Plaintiff's sister then called 911 and LifeNet dispatched an ambulance to the public entrance of the Bi-State Jail. *Id.* LifeNet personnel assessed Plaintiff in the jail lobby upon his release. *Id.* ¶ 48.

LifeNet personnel then transported Plaintiff directly from the lobby of the Bi-State Jail to Wadley Regional Medical Center. Once at Wadley Regional Medical Center, Plaintiff was placed on a ventilator and dialysis. *Id.* ¶ 50. Plaintiff also underwent surgery to determine the extent of bowel damage he sustained, and surgeons found that a large portion of Plaintiff's sigmoid and transverse colon was infected and gangrenous. *Id.* As a result, a section of Plaintiff's colon was surgically removed, and he now wears a permanent ostomy bag. *Id.* Plaintiff was also diagnosed with the following conditions: acute renal failure, severe dehydration, ischemic colitis, multiple facial fractures, multiple rib fractures, rhabdomyolysis, sepsis, pneumonia, blood clots and hyperkalemia. *Id.* ¶ 49. In addition to his physical injuries, Plaintiff also alleges that he now suffers from major depression and post-traumatic stress disorder. *Id.* ¶ 50.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if the evidence could lead a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law identifies which facts are material. *Id.*

In determining whether a genuine issue for trial exists, a court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. v. Zenith Radio*, 471 U.S. 574, 587 (1986). The moving party bears "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

Once a party has made that showing, the nonmoving party bears the burden of establishing otherwise by supporting his contentions with some evidence. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 324). The non-moving party cannot "rest upon mere allegations or denials of [the] pleading but must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted). "Summary judgment is appropriate if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to a party's case." *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 322).

## DISCUSSION

**I.      Issues of fact remain as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs.**

Defendants allege that Plaintiff cannot produce sufficient evidence to establish that any individual Defendant was deliberately indifferent to Plaintiff's medical needs.  Docket No. 83 at 19–27.  Defendants state that prison officials violate detainees' constitutional rights when they demonstrate deliberate indifference to a pretrial detainee's serious medical needs constituting an unnecessary and wanton infliction of pain.  *Id.* at 20 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Defendants further state that the deliberate indifference standard is "an extremely high standard to meet" and, in the context of an episodic failure to provide reasonable medical care to a pretrial detainee, means that: (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates the official subjectively intended that the harm occur.  *Id.* at 21 (citing *Gobert v. Caldwell*, 463 F.3d 339, 346, 351 (5th Cir. 2006); *Thompson v. Upshur County Texas*, 245 F.3d 447 (5th Cir. 2001)).  Defendants acknowledge in reply that it is unclear whether the Fifth Circuit requires "subjective intent to harm" as stated by the *Thompson* panel.  Docket No. 102 at 1–2.  But Defendants argue Plaintiff still does not meet the standard that the nurse and guard defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn or actually drew an inference of substantial risk.

Defendants contend that, to meet his burden, "Plaintiff must show that the official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Id.* at 2 (quoting *Gobert*, 463 F.3d at 346).  Defendants argue that Plaintiff's proof falls short of meeting this standard because (1) Plaintiff had a common black eye that he did not complain about; (2)

Plaintiff was stumbling and incoherent when exiting the facility just as he was when entering the facility, and such actions by an intoxicated inmate are not unusual; (3) an inmate lying naked in his cell is not uncommon; and (4) Plaintiff produced a self-serving affidavit from his sister alleging that at discharge, an unidentified person she believed to be a sergeant answered "yes" when asked whether he thought that Plaintiff needed medical attention. *Id.* at 5–8. Defendants state that the events at the time of Plaintiff's release from the jail offer no evidence of his condition over the preceding day and a half spent in jail. *Id.* at 7–8. And Defendants argue that no significant delay in treatment was caused by the sergeant answering yes to a question by Plaintiff's sister about medical attention, as Plaintiff was promptly released and transported. *Id.*

Specifically, as to nurse defendants Jonie Slimak-McFaul and Markesha Jones, Defendants argue that they are the only individual defendants alleged to have direct dealings with Plaintiff. Docket No. 83 at 22. Defendants state that the interactions with Plaintiff were brief and are fully set out in the nurses' affidavits. *Id.* at 22–26. Defendants state that the nurses were aware of their duty to respond to an inmate's serious medical need, that they did not draw an inference that Plaintiff had a serious medical need or intend to harm him, and that no one suggested to them that Plaintiff had a serious medical need during his July 17 incarceration. *Id.* Defendants therefore argue that the individual nursing defendants, as well as their supervisor Michelle Arnold, are entitled to judgment as a matter of law.

As to the corrections staff or corporate employees, Defendants argue that they also did not draw an inference of substantial risk of serious harm or have a subjective intent to harm Plaintiff. *Id.* at 26–27. They argue that Plaintiff exhibited behavior common to many arrestees who are brought to jail while intoxicated, did not claim that he had been beaten, did not claim that he had a medical need and no inmate or staff member suggested to the guards that Plaintiff had a serious

medical need. *Id.* at 27. Defendants therefore argue that the guards and their supervisor, James McCormick, are also entitled to judgment as a matter of law. Finally, Defendants contend that because no person acted with deliberate indifference, the corporate and municipal defendants are entitled to judgment as a matter of law. *Id.*

Plaintiff first responds on the standard under which he must prove his inadequate medical care claims, arguing that he does not have to prove subjective intent to harm. Docket No. 98 at 30–34. Plaintiff argues that he must allege facts "demonstrating selective deliberate indifference, meaning that [defendant] knew of and disregarded a substantial risk of serious harm," and that in recent years the Fifth Circuit has neither imposed "an intent-to-cause-harm" requirement or even mentioned one. *Id.* at 30–32 (citing *Sabbie v. Southwestern Correctional, LLC, et al.*, Civil Action No. 5:17-cv-00113, Docket No. 122, at 84 (E.D. Tex. Mar. 6, 2019); *Perniciaro v. Lea*, 901 F.3d 241, 257 (5th Cir. 2018); *M.D. v. Abbott*, 907 F.3d 237, 251–52 (5th Cir. 2018); *Williams v. Hampton*, 797 F.3d 276, 280–81 (5th Cir. 2015) (en banc)). Plaintiff can thus establish deliberate indifference if he can show that defendant (1) "knew that an inmate faced a substantial risk of serious harm," and (2) "disregard[ed] that risk by failing to take reasonable measures to abate it." *Id.* at 31 (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)).

Plaintiff argues that he can prove deliberate indifference as to Defendants Jones and McFaul by showing they knowingly disregarded a substantial risk of serious harm to him. *Id.* at 34. Plaintiff first points to the fact that Plaintiff was believed to be intoxicated at booking, yet intoxication withdrawal protocols were not utilized and no medical assessment was performed. *Id.* Second, Plaintiff was placed in a medical observation cell during the early hours of July 18, but there is no indication in the cell check log that Nurse Jones made her required face-to-face observation of Plaintiff at the beginning of her shift. *Id.* Third, no nursing staff member notified

Dr. Shah that Plaintiff was placed in medical observation, violating the standard set forth in LaSalle's written directive to staff. *Id.* Fourth, Plaintiff's medical file is devoid of any indication that medical staff performed assessment, took vital signs or provided treatment to him on any of the five occasions medical staff observed his cell on the morning of July 18. *Id.* at 35. Fifth, Plaintiff notes that when Nurse McFaul came on duty, there is no evidence in Plaintiff's medical file that Nurse Jones provided the required change of shift report on Plaintiff and reasons why he had been held in medical observation. *Id.* Sixth, the cell check log report indicates that Nurse McFaul observed Plaintiff at 6:34 p.m. and was back at Plaintiff's cell 24 minutes later at 6:59 p.m.; during these visits, Plaintiff had been repeatedly observed as naked in his cell for almost three hours. *Id.* Seventh, like Nurse Jones, Nurse McFaul performed no medical assessment, took no vital signs and failed to follow the nursing protocols, including those for alcohol or narcotics withdrawal, and she also failed to notify Dr. Shah that Plaintiff was in medical observation. *Id.* Eighth, the cell check log report verifies that through July 18 and July 19, Plaintiff was observed by correctional staff as consistently lying naked on the floor of his cell. *Id.* Ninth, when Nurse Jones returned for her next shift, she made her required face-to-face observation of Plaintiff, but failed to follow any nursing protocols, take vital signs, conduct an assessment or make any notations in Plaintiff's medical file, even though Plaintiff had been observed naked in his cell for more than 14 hours and had been consistently lying on the cell floor for almost 11 hours. *Id.* Lastly, when Nurse Jones performed her only medical assessment of Plaintiff at approximately 12:40 p.m. on July 19, she documented a blackened and swollen right eye and Plaintiff's inability to walk without stumbling. *Id.* at 36. Plaintiff contends that if she had followed LaSalle's head trauma protocol, she would have taken his vital signs, notified a physician or emergency medical

services and kept Plaintiff immobile until help arrived. *Id.* Instead, Nurse Jones documented that he was in need of no further evaluation. *Id.*

Further, Plaintiff asserts that Defendants Jones and McFaul were licensed vocational nurses ("LVNs") with a strictly limited scope of practice, and they controlled Plaintiff's access to medical professionals who could diagnose and treat him. *Id.* Plaintiff contends that there are two types of deliberate indifference cases: one type involves situations where defendants "prevent an inmate from receiving treatment" or "deny him access" to a medical professional capable of diagnosing or treating him. *Id.* (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000)). Plaintiff contends that if a defendant knows that her role is "solely to serve as a gatekeeper for other medical personnel capable of treating the [inmate's] condition, and if [she] delays or refuses to fulfill that gatekeeper role . . . it stands to reason that [she] also may be liable for deliberate indifference for denying access to medical care." *Id.* (quoting *Sealock*, 218 F.3d at 1211).

Moreover, Plaintiff notes in his surreply, Defendants persist with an incorrect argument that the only symptoms of his injuries were his black eye and stumbling. Docket No. 103. Plaintiff points out that at the time of his arrest he was sweating profusely and, as he was placed into the squad car, his legs began cramping. *Id.* at 1. Plaintiff posits that, since he only has a single kidney, he was likely experiencing kidney failure for which he was never assessed or treated. *Id.* Plaintiff points out that Defendants' records reveal he was laying naked in his cell for almost 24 hours before his release and that LaSalle's cell check log confirms medical staff was present at Plaintiff's cell on at least eight occasions, five of them within a one-half hour time span. *Id.* Yet there is no evidence in the medical file that the staff did anything for Plaintiff during those visits. *Id.* Plaintiff contends that protocols were not followed and he was ignored. *Id.* Plaintiff also argues that there is evidence that LaSalle supervisory staff knew Plaintiff needed outside medical care before they

released him on July 19.  *Id.* at 2.  Plaintiff points to the shift supervisor's admission that Plaintiff was in need of outside medical treatment during his release and that no explanation is given for how Plaintiff could be in need of no further evaluation while in LaSalle's custody but in medical distress when paramedics received him in the lobby of the Bi-State Jail immediately upon his release.  *Id.*  Plaintiff also submits numerous photographs depicting bruising on his body when he arrived at the hospital, including what is described as defensive marks on his hands.  *Id.*  Plaintiff argues that these injuries were not self-inflicted and his treating physicians and at least one testifying expert concluded that Plaintiff was beaten during his incarceration period.  *Id.*  Plaintiff's expert also testifies that from his condition it would have been obvious even to a lay person that he was suffering from a serious medical problem and needed treatment.  Docket No. 98 at 17.

To further support his claims, Plaintiff points to the underlying context of this case.  This includes the fact that video footage of Plaintiff's incarceration under control of Defendants was lost, *id.* at 16, which the parties will be allowed to present evidence and make arguments about to the jury.  Docket No. 124 at 10.

As an initial matter, the standard under which the Court will proceed is "the *Farmer* subjective recklessness standard without the intent-to-[]harm requirement."  *Dyer v. Fyall*, 322 F.3d 725, 738 (N.D. Tex. 2018); *see also Rodriguez v. Bexar Cty.*, No. SA-18-CV-248-XR, 2018 WL 4431433, at *6 (W.D. Tex. Sept. 17, 2018) (stating the plaintiff "must allege facts demonstrating subjective deliberate indifference, meaning that [the defendant] knew of and disregarded a substantial risk of serious harm").  The Fifth Circuit does not appear to follow the intent-to-harm standard any longer.  In discussing that certain cases have posited this third element, the Fifth Circuit has declared "our court, however, recently wrote that it 'cannot endorse [this] analysis' because it 'depart[s] from controlling Supreme Court and Fifth Circuit law.' "  *Dyer v.*

*Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Garza v. City of Donna*, 922 F.3d 626, 636 (5th Cir. 2019*)* (collecting decisions)) (alterations in original).  Further, as noted by Plaintiff, the Fifth Circuit's Model Jury Instructions also do not impose the need to prove "intent to harm."  *See* Fifth Circuit Pattern Jury Instructions Civil 10.11 (2016).  This accords with Supreme Court precedent: "[w]hile *Estelle* establishes that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

According to the Supreme Court, the requisite state of mind in deliberate indifference cases is a "question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *See id.* at 842.  In cases involving inadequate medical care, the Fifth Circuit has listed several additional ways of establishing deliberate indifference: "[a] plaintiff can show deliberate indifference by showing that [1] [a defendant] 'refused to treat him, [2] ignored his complaints, [3] intentionally treated him incorrectly, or [4] engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs.' " *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (quoting *Easter v. Powell,* 467 F.3d 459, 464 (5th Cir. 2006)).

Further, the individuals who came into contact with Plaintiff were gatekeepers of medical care, not treating physicians.  LVNs and guards at the Bi-State Jail "serve as a gatekeeper for other medical personnel capable of treating the [detainee's] condition, and if [they] delay[] or refuse[] to fulfill that gatekeeper role . . . it stands to reason that [they] also may be liable for deliberate indifference for denying access to medical care." *Sealock*, 218 at 1211.  *Rodrigue v. Grayson* is

instructive.  557 Fed. Appx. 341 (5th Cir. 2014).  There, the Fifth Circuit upheld the district court's

finding that failure by a licensed practical nurse ("LPN") to refer an inmate to the prison's medical

doctor despite persistent complaints of extreme pain and symptoms for over a week constituted

deliberate indifference.  *Id.*  The district court explained its finding that the LPN was not entitled

to qualified immunity as follows:

> [I]t is important to specify that the question is not whether [the LPN] is liable for
> failing to recognize that Rodrigue had acute appendicitis.  As previously discussed,
> a LPN is not authorized to make a diagnosis.  However, a LPN, and especially a
> LPN who is the sole gatekeeper for access to a physician, must be able to know
> when there is a risk of a serious condition that requires additional care.  LPN
> Grayson knew that Rodrigue's complaints showed that he was at risk of serious
> harm.  She simply decided not to respond to that risk.  This is not a case where an
> inmate saw a physician and that physician made an unfortunately incorrect medical
> decision . . . . In this case, despite persistent complaints of extreme abdominal pain
> and bilious vomiting for over a week, a prisoner was simply denied access to a
> medical professional competent to diagnose and treat his condition.  The Court is
> convinced that this conduct rose to the level of a wanton disregard for Rodrigue's
> serious medical needs . . . . When a gatekeeper to emergency care, like LPN
> Grayson, knowingly disregards a prisoner's complaints, she acts with deliberate
> indifference to that prison's medical needs.

*Rodrigue v. Morehouse Det. Ctr.*, No. CIV.A. 09-985, 2012 WL 4483438, at *6 (W.D. La. Sept.

28, 2012), *aff'd sub nom. Rodrigue v. Grayson*, 557 Fed. Appx. 341 (5th Cir. 2014).

As to the nurse defendants, a genuine issue of fact exists as to whether they acted with

deliberate indifference to Plaintiff's serious medical needs.  Plaintiff provides evidence that could

lead a reasonable jury to find the nurses were deliberately indifferent.  First, Plaintiff was

intoxicated at booking, but LaSalle's staff did not perform a medical assessment or use withdrawal

protocols.  Nurse Jones then did not perform a required cell check even though Plaintiff was in the

medical observation cell.  Against policy, a doctor who could treat Plaintiff was not notified that

Plaintiff was placed in medical observation.  Five medical checks were performed within a short

period but there are no records of what occurred, including no record that any medical assessment

was performed.  At the change of shift, there is no record that Nurse Jones conveyed any of this information to her replacement.  Nurse McFaul performed two checks at the start of her shift within 30 minutes of each other but only noted that Plaintiff had been lying naked in his cell for three hours and did not record any type of medical assessment.  Nurse McFaul also failed to inform the treating doctor Plaintiff was in medical observation.  At the end of her shift, there is no indication that she informed Nurse Jones that Plaintiff continued to lay naked in his cell for at least 11 hours.  Nurse Jones confirmed Plaintiff had been lying in his cell face-down and naked for 11 hours but no medical assessment took place.  Nurse Jones did perform a medical assessment of Plaintiff upon his release, where she noted his black eye and his inability to walk.  But she again took no vitals and recorded he did not need any further treatment.  Plaintiff also cited contrary evidence that, during the release process, another member of the jail staff believed Plaintiff required medical attention.  Plaintiff was then taken to the hospital by paramedics immediately upon his release and remained hospitalized for almost a month.

As to the correctional officers, there are also genuine issues of fact remaining.  First, there is an issue of fact as to what happened to Plaintiff in jail.  Plaintiff alleges he was beaten; Defendants argue he injured himself.  This is a fact issue for the jury.  The jury will also be able to hear evidence and argument from the parties on what happened to the video footage that would have recorded Plaintiff's incarceration.  Second, whether Plaintiff was suffering from conditions considered obvious even to a lay person that he needed medical attention can serve as circumstantial evidence under the deliberate indifference standard.  And there is expert testimony that based on Plaintiff's condition, it would have been obvious to a lay person that he needed medical attention.  Plaintiff also points to the fact that guards were present with the nurses on the several checks they made, the guards performed most of the checks during Plaintiff's incarceration,

the guards recorded that he was lying naked in his cell for hours and, at some point, would have observed the black eye and bruising Plaintiff had at release.  While Defendants claim that no beating occurred during Plaintiff's incarceration and that no one drew a subjective inference of serious medical risk to Plaintiff, they point to affidavits from only a subset of guards on duty during the time at issue.

Moreover, as issues of fact remain as to whether the nurse and guards who interacted with Plaintiff were deliberately indifferent to his medical needs, this contention cannot serve as a ground to argue that the supervisory, corporate or municipal defendants are not liable as a matter of law for Plaintiff's alleged constitutional violations.  Defendants' Ground 1 for summary judgment as to liability against all Defendants is accordingly **DENIED**.

## II.      **Excessive force is not a claim in suit.**

Defendants seek summary judgment that no Defendant is liable for excessive force under the U.S. or Arkansas Constitutions.  Docket No. 83 at 27.  Plaintiff has not asserted an excessive force claim.  Defendants' Ground 2 for summary judgment is thus **DENIED-AS-MOOT**.

## III.     **Issues of fact remain as to whether Supervisory Defendants McCormick and Arnold are liable under *Monell*.**

Defendants first contend that because, as they argued in Ground 1 and Ground 2 for summary judgment, there is no evidence that any individual defendant violated the rights of Plaintiff, the supervisory claims must fail.  Docket No. 83 at 30.  Second, Defendants contend that Plaintiff cannot produce sufficient evidence of a pattern of failure to train or supervise subordinates by Defendants McCormick or Arnold.  *Id.* at 31–32.  Defendants point to the declaration of Defendant McCormick to verify that at times pertinent to this case, newly hired staff—including guards, nurses and EMTs—were required to undergo 40 hours of classroom Pre-Service Training.  *Id.* at 32.  In this training there was five hours on "CPR - First Aid - Medical Issues - Hunger

Strikes" and the Pre-Service Curriculum Schedule indicates there was training on "Inmate Medical Services." *Id.* Defendants point to the declarations of various guards and nurses to verify that the training was received. *Id.* at 34.

Plaintiff responds that the supervisory defendants are liable. Docket No. 98 at 39–42. Plaintiff argues that Nurse Arnold's failure to train and supervise the nurses is affirmatively linked to the nurses' failure to follow established medical protocols. *Id.* at 40. Plaintiff points to two prior deaths of detainees in as many years and argues that those deaths should have caused the supervisors to ensure that the nurses were familiar with and utilized LaSalle protocols. *Id.* Plaintiff contends that there is evidence that neither Nurse Jones nor Nurse McFaul were trained on the protocols at the Bi-State Jail, and Nurse Jones did not even know the protocols existed in 2018. *Id.*

Plaintiff argues that supervision was also lacking in a manner that directly led to the violation of his constitutional rights. Plaintiff points to the fact that Supervisor Arnold is officed at the Annex and is seldom present at the Bi-State Jail. *Id.* Plaintiff contends that the LVNs/LPNs were essentially left to supervise themselves in the jail. *Id.* And, instead of improving the delivery of healthcare following the prior deaths of detainees, the nursing staff continued to ignore the protocols and their responsibilities to their detainee patients, which was also evident in the deaths that followed at the Bi-State Jail in 2019 and 2020. *Id.*

Plaintiff argues that the training and supervision of the correctional staff by Warden McCormick is also lacking. Plaintiff points to evidence that at least one of the correctional officers charged with observing him was unaware of LaSalle's written policy requiring face-to-face observation of detainees every 20 minutes. *Id.* at 41. Plaintiff notes that it is the correctional staff who conducts virtually all observations of detainees, even those in medical observation cells. *Id.*

And Plaintiff contends that there is ample evidence that correctional staff were poorly trained in recognizing signs that a detainee may be in serious medical distress. *Id.* at 22–23, 41.

First, Defendants' argument that *Monell* cannot be reached because none of the individual defendants deprived Plaintiff of his constitutional right is unavailing, as Defendants' Ground 1 was denied in view of remaining issues of material fact.

Second, Defendants claim that Plaintiff cannot show failure to train or supervise because the nurses, guards and EMTs underwent various required training when hired. But there are issues of fact that foreclose summary judgment on this matter. Plaintiff points to several pieces of evidence that show while healthcare may be listed in the training materials, individual defendants in this case still may not have received proper training or supervision to fulfill their constitutional obligation to provide care to detainees in serious medical need. As to Supervisor Arnold's failure to train and supervise the nurses, there is evidence that LaSalle supervisors were aware that prior inmate deaths had resulted from the nursing staff's failure to follow nursing protocols and the medical director's standing orders and that the nursing staff was not familiar with nor regularly utilized those protocols. There is also evidence that neither Nurse Jones nor Nurse McFaul were trained on protocols at Bi-State Jail at the time of Plaintiff's detainment; Nurse Jones did not even know the protocols existed and Nurse McFaul only knew from her prior work experience. Further, there is evidence that Supervisor Arnold is seldom present in the jail and nursing staff, who cannot make medical diagnoses, are in the jail unsupervised.

As to the Warden McCormick's supervision, there is evidence that at least one of the correctional staff observing Plaintiff was unaware of the jail's procedure for checking on inmates within a certain period. And, at the time of Plaintiff incarceration, the jail did not have a system for evaluating the medical needs of detainees to report for the correctional staff—a policy that was

implemented later.  Further, there is evidence that the correctional staff was told to only look for living, breathing bodies in their face-to-face checks.  Plus, the correctional administrators were similarly not located in the jail, leaving lower-level officers to supervise the correctional work. Plaintiff also pointed to LaSalle Defendants' history of record falsification to posit that the jail administrators were on notice that guards were not performing the required face-to-face checks.

Based on the foregoing, there is evidence that could lead a reasonable jury to find the supervisory defendants liable for any alleged constitutional violations of their subordinates. Defendants' Ground 3 for summary judgment as to the liability of the supervisory defendants is thus **DENIED**.

## IV.     Issues of fact remain as to whether Southwestern Correctional, L.L.C. can be held liable under *Monell*.

Defendants contend that because, as they argued in Ground 1 and Ground 2, there is no evidence that any individual defendant violated Plaintiff's rights, there is no viable claim against Defendant Southwestern Correctional, L.L.C.  Docket No. 83 at 35.  Defendants also contend that a corporation can only act through its agents, and Plaintiff cannot produce sufficient evidence to establish liability under *Monell*.  *Id.*

Plaintiff responds that the corporate defendants are liable under *Monell*.  Docket No. 98 at 42–44.  Plaintiff states that private correctional companies are subject to § 1983 liability for their unconstitutional acts and omissions, as they are state actors when performing the traditional government function of confining citizens.  *Id.* at 42 (citing *Rosborough v. Management & Training Corp.*, 350 F.3d 459 (5th Cir. 2003)).  They are thus liable for the harm-causing actions or omissions of their employees resulting from actual or *de facto* policies or customs.  *Id.* (citing *Monell v. Dept of Soc. Services of City of New York*, 436 U.S. 658, 690-91 (1978)).  Plaintiff further points out that a custom can be an action or inaction and need not be formally approved if it is so

widespread as to constitute general practice. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 404 (1989)). Unconstitutional customs can be shown through an entity's failure to properly train employees, evidence of "persistent, widespread practices" or can even be established "absent proof of pattern" where the risk of constitutional harm was an obvious or highly predictable result of the entity's failure to train employees on their constitutional duties. *Id.* (citing *Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000); *Little v. Houston Ind. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018)).

Here, Plaintiff states that this is the third case in which LaSalle Defendants have failed to train nursing staff on the mandatory medical protocols that govern the Bi-State Jail. *Id.* at 42–43. Plaintiff points to Nurse Jones, who was unaware LaSalle's protocols existed. *Id.* at 43. And, as to Nurse McFaul, Plaintiff contends that while she knew about the protocols, it was not based on any training she received from LaSalle; instead, she knew to use protocols by virtue of her prior employment at two other correctional facilities. *Id.* Further, Plaintiff argues that the correctional staff were only instructed to "look for living, breathing bodies" and were "untrained when it came to monitoring detainees with serious medical needs." *Id.*

Plaintiff also argues that there is a widespread custom and practice of falsifying observation logs to reflect observations that never took place; likewise, there is a custom and practice of failing to conduct timely observations of detainees. *Id.* Plaintiff points to evidence from State Jail Commission investigations that repeatedly reveal such falsifications. *Id.*

Finally, Plaintiff points out that the *Sabbie* court already rejected Defendants' *Monell* arguments. *Id.* at 44 (citing *Sabbie v. Southwestern Correctional, LLC, et al.*, Civil Action No. 5:17-cv-00113, Docket No. 122, at 153–64 (E.D. Tex. Mar. 6, 2019)).[2]

---

[2] Magistrate Judge Caroline M. Craven has thoroughly analyzed *Monell* and deliberate indifference for medical care claims at the summary judgment stage in a wrongful death case against several of the same defendants in suit here.

The Court has denied Defendants' motion for summary judgment on Ground 1 and Ground 3 because there are issues of fact and a reasonable jury could find that the individual defendants deprived Plaintiff of his constitutional right to medical care and that deprivation occurred because of the supervisory defendants' failure to train. Similarly, Plaintiff has produced evidence that could lead a reasonable jury to find that failure to train reached the standard of an unconstitutional custom. Accordingly, Defendants' Ground 4 for summary judgment is also **DENIED**.

## V.    Bowie County does not have immunity to § 1983 or Arkansas Constitution claims.

Defendants contend that their sovereign immunity is not waived for claims of either negligence or violation of the Arkansas Constitution. Docket No. 82 at 38. Defendants argue that a Texas municipal government's sovereign immunity is generally not waived in the operation of a jail, and a county is not vicariously liable for the actions of non-employees. *Id.* at 39. Defendants state that Bowie County generally enjoys immunity from suit and its immunity is not waived under the Texas Torts Claims Act for claims of negligence. *Id.* As to the Arkansas Constitution claim, Defendants state that the Supreme Court has ruled that states are immune from private suits brought in other states' courts. *Id.* at 40.

Plaintiff responds that Bowie County is not immune. Docket No. 98 at 44. Plaintiff argues that Bowie County is indirectly liable to him for his § 1983 claims under the non-delegable duty doctrine (*id.*), which is the subject of Plaintiff's motion for summary judgment (Docket No. 64). Further, Plaintiff argues that Texas immunity statutes have no application to Arkansas claims. *Id.* (citing *Sabbie*, Civil Action No. 5:17-cv-00113, Docket No. 122, at 164–65).

Negligence is not alleged separate from § 1983 in this case. Bowie County is not immune from § 1983 claims, as the government has an "obligation to provide medical care for those whom

---

That order was a report and recommendation, to which defendants had filed objections. But the case was settled prior to this Court considering the matter, and the report was never adopted.

it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The non-delegable duty doctrine grew out of the Supreme Court's decision in *West v. Atkins*, where Court held that "[c]ontracting out prison medical care does not relieve the [government] of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive [government] prisoners of the means to vindicate their [constitutional] rights." 487 U.S. 42, 56 (1988) (finding that a private physician who was under contract with a state prison "acted under the color of state law" pursuant to § 1983). Even though the Fifth Circuit has not expressly recognized the non-delegable duty doctrine in the context of a § 1983 case, it has not rejected it, the doctrine is supported by *West* and numerous other circuit and district courts have applied it. *See Sabbie*, Civil Action No. 5:17-cv-00113, Docket No. 122, at 158–61 (collecting cases).

The *Sabbie* court singled out from the recent examples applying the non-delegable duty doctrine *Estate of Walter by & through Klodnicki v. Corr. Healthcare Companies, Inc.*, 323 F. Supp. 3d 1199 (D. Colo. 2018). There, the *Sabbie* court noted:

> [T]he estate of a pretrial detainee who died in a county jail after being deprived of prescription medication brought a § 1983 action. Jail health services had been delegated to a private contractor for healthcare services company under contract. *Id.* at 1203. As here, *Monell* allegations were made against the private contractor. *Id.* at 1215. The county argued it could not be liable because there was no evidence the county was on notice of any deficiencies in the care being provided by the private contractor. *Id.*
> Noting the Tenth Circuit had never decided whether to adopt the non-delegable duty doctrine, the court was "nonetheless persuaded by the decisions of many other courts that the doctrine is correct. . . , at least where, as here, the government delegates final policymaking authority to the third party." *Id.* at 1215–16. The court held a delegation of jail services to a private company effectively makes the policies of the private company those of the county. "Thus, [the private company's] policies became the County's policies." *Id.* at 1216. The court found that if the private company was found to be liable under *Monell*, so too would the county "because the [private company] stepped into the County's shoes with the County's permission." *Id.*

*Sabbie*, Civil Action No. 5:17-cv-00113, Docket No. 122, at 161.

The Court finds this instructive. If Plaintiff proves his *Monell* claims against the Lasalle Defendants, Bowie County is liable through the non-delegable duty doctrine for constitutionally inadequate medical care delivered by the private company it contracted with to run the jail. No further facts would need to be adduced, and Plaintiff would not need to separately prove *Monell* against Bowie County.[3] Accordingly, Plaintiff's motion for summary judgment on its declaratory judgment claim as to Bowie County is **GRANTED**.

On the Arkansas Constitution claims, Defendants have not argued why a Texas state immunity statute would apply to Arkansas claims—despite the fact that the *Sabbie* court noted this deficiency in Defendants' argument. Docket No. 83 at 40; *Sabbie*, Civil Action No. 5:17-cv-00113, Docket No. 122, at 164 ("As urged by Plaintiffs, the County asserts no Arkansas-based immunity defense at all and 'fails to answer the question of how a Texas-law based immunity defense would apply to claims asserted against it under the laws of Arkansas.' "). Further, Defendant Bowie County's argument that it is immune from suits brought in other states' courts is unavailing. Docket No. 83 at 40. Plaintiff is suing a Texas municipality in a Texas court. Accordingly, Defendants' Ground 5 for summary judgment as to Bowie County is **DENIED**.

## VI. Texarkana's direct liability is not alleged.

Defendants contend that Texarkana cannot be held directly liable because it was not involved in the operation of the Bi-State Jail. Docket No. 83 at 40. Plaintiff has not alleged that

---

[3] Defendants also argued that they have not otherwise attempted to avoid legal liability on the basis that the county has contractually delegated its duties, and, as such, no controversy currently exists for the Court to rule on from Plaintiff's summary judgment motion on his declaratory judgment claim. Docket No. 74 at 7; Docket No. 125 at 112:10–20. Defendant Bowie County seeks summary judgment that its immunity is generally not waived in the operation of a jail and, at oral argument, would not concede that if *Monell* was found against the LaSalle Defendants that it had a non-delegable duty to Plaintiff. Docket No. 83 at 39; Docket No. 125 at 111:16–112:1. Instead, Defendants argued Plaintiff would need to separately prove *Monell* against Bowie County as well. Docket No. 125 at 111:16–112:1. Thus, Plaintiff's declaratory judgment claim is contested; however, based on the analysis stated above, Defendant's arguments are unavailing.

Texarkana is directly liable.  Defendants' Ground 6 for summary judgment is thus **DENIED-AS-MOOT**.

## VII.    Issues of fact remain as to whether Texarkana can be held liable under *Monell*.

Both parties' arguments on Defendants' Ground 7 for summary judgment rely on their briefing to Plaintiff's motion for summary judgment as to his declaratory judgment claim (Docket No. 64) that the municipal defendants have a non-delegable duty and are thus liable for any deprivation of Plaintiff's constitutional rights committed by the non-municipal defendants.  Docket No. 83 at 41; Docket No. 98 at 45.  As such, the Court will analyze Defendants' Ground 7 and Plaintiff's summary judgment motion as to Texarkana together.

As discussed under Ground 5 on Bowie County, the non-delegable duty doctrine makes the municipal defendants liable for constitutional deprivations committed by the non-municipal defendants such that contracting out prison medical care does not relieve a state entity of its constitutional duty to provide adequate medical treatment to those in its custody.  *See Sabbie*, Civil Action No. 5:17-cv-00113, Docket No. 122, at 156–61.  Plaintiff contends that, in addition to Bowie County, Texarkana is also indirectly liable for any *Monell* violations found to be committed by the corporate and individual Defendants through the non-delegable duty doctrine.  Docket No. 64 at 5.

Defendants argue that Texarkana does not have a non-delegable duty to provide adequate medical care to those in custody at the Bi-State Jail because the jail was operating under Bowie County's authority, not Texarkana's authority.  Docket No. 75 at 3.  And Defendants contend that Texarkana had no continuing duty to protect Plaintiff after he was turned over to the Bowie County Correctional Center.  *Id.*  Defendants further argue that Texarkana cannot have a non-delegable duty based upon arrest alone: a public official is liable under § 1983 only if he causes plaintiff to

be subjected to a deprivation of his constitutional rights, and local governments are only responsible for their own illegal acts. *Id.* at 4. Here, Defendants argue that Plaintiff does not allege, and cannot establish, any misconduct by either Texarkana or its police officers. *Id.* at 5. Defendants also argue that Plaintiff cannot use non-delegable duty doctrine to sidestep *Monell*'s requirements. *Id.* at 2.

For the same reasons discussed under Ground 5 regarding Bowie County, Defendants' argument that Plaintiff is seeking to side-step *Monell* is unavailing. *See supra* Section V. Plaintiff has stated that he must first prove his claims against the individual, supervisory and corporate defendants for the non-delegable duty of the municipal defendants to apply. *See* Docket No. 85.

Compared to Bowie County, however, there is an extra step that must be considered. Defendants contend that, as a matter of law, the non-delegable duty doctrine cannot be extended to Texarkana, because Texarkana only acted as the arresting entity. Defendants' contention is incorrect. As the *Sabbie* court discussed, arresting entities can be held liable for constitutional violations perpetrated on the arrestee by other public actors. *See Sabbie*, Civil Action No. 5:17-cv-00113, Docket No. 122, at 161–64. Like the *Sabbie* court, this Court finds *Ford v. Suffolk County* instructive. 154 F. Supp. 2d 131 (D. Mass. 2001). In *Ford*, a city and county had an agreement under which the county took custody of and housed the city's female arrestees. 154 F. Supp. 2d at 133–34. The county subjected all jail admittees to strip and visual body cavity searches; a certified plaintiff class challenged the constitutionality of the searches. *Id.* The question was whether the city (which customarily transferred its inmates to the jail of neighboring county) could be held liable for the policies, practices and customs of the county's jail.

The city had no policy of its own relating to strip searches, had no control over the county's policies relating to such searches after the inmates were taken to the county jail and no city

Page **23** of **30**

employee was alleged to have taken part in the unconstitutional conduct. *Id.* at 148. Yet the *Ford* court found the plaintiffs' claims "clearly actionable under § 1983" because of the arrangement between the city and the county for the county to take custody of and house the city's arrestees in the county jail. *Id.* Finding "the [city's] duty [to detainees in its care] is non-delegable," the court determined "the [city] itself remains liable for any constitutional deprivations caused by the policies or customs of the [county]." *Id.* at 149 (internal quotations omitted; bracketed language in original). The court explicitly decided that a non-delegable duty existed even though the county was a public entity and not a private one, because "there is no reason to suppose that a municipality's constitutional obligations to its detainees are somehow more acceptably delegated to a public than a private entity." *Id.* at 149, n.37.

The *Ford* court interpreted *West* to mean that "any entity, public or private, that takes on the city's obligations may be held liable as a state actor under § 1983, but the city, too, retains its oversight obligations." *Id.* at 138 n.37. The *Trujillo* court agreed. *See Trujillo v. City & Cty. of Denver*, No. 14-CV-02798-RBJ-MEH, 2016 WL 5791208 (D. Colo. Sept. 7, 2016). In a case for deliberate indifference to an inmate's medical needs, the court found that the City of Denver could not "dodge its obligation to provide medical care" when an inmate brought her § 1983 claims against Denver Health, another public entity, "because it does not account for the important aim of preventing a public entity from avoiding liability by strategically choosing to contract with another public entity." 2016 WL 5791208, at * 14; *see also Young v. City of Little Rock*, 249 F.3d 730, 736 (8th Cir. 2001) (upholding a jury verdict for plaintiff who had been subjected to an unconstitutional search at the county jail, reasoning "the jury could reasonably infer that the City knew that a person entering the [County] jail . . . would be strip-searched. In these circumstances,

it is far from unfair to attribute to the City the policies routinely used by the County jail in the housing and processing of City prisoners."). The Court finds these cases instructive.

At oral argument, Defendants represented that Texarkana contracts with Bowie County, another public entity, to have its arrestees held at the Bi-State Jail. Docket No. 125 at 112:21–113:19. For the reasons discussed above, Defendants' Ground 7 for summary judgment that Texarkana cannot be held indirectly liable for Plaintiff's alleged injury is **DENIED**.

But this Court does find that an additional step exists to establish a non-delegable duty between two public entities before such a duty exists in this case. Plaintiff must show that Texarkana was deliberately indifferent to Bowie County's failure to ensure inmates were receiving constitutionally adequate medical care at the Bi-State Jail separate and apart from establishing his *Monell* claims against LaSalle Defendants. The *Trujillo* court, in distinguishing its case from a Sixth Circuit decision, discussed this step:

> The *Deaton* court did not foreclose the possibility that one public entity could be liable for another public entity's policy. Rather, the court reasoned that "because each entity is required to be in compliance with Ohio law, we do not believe the County adopts the City's policy by default *absent a showing of deliberate indifference*." 989 F.2d at 889 (emphasis added). The court concluded that the county was not deliberately indifferent because, prior to filing of the suit, there was no evidence that "the [county] sheriff knew or should have known that [the municipality's] strip searches were conducted in violation of state law." *Id.* at 889–90 (noting that the filing of the suit arguably placed the county on notice and "any inaction by the County after this point might make a case for deliberate indifference" to subsequent prisoners' rights).
>     Here, unlike in *Deaton*, the Court finds that plaintiff has alleged plausibly that the City was deliberately indifferent. Plaintiff alleges that Denver knew or should have known that inadequate health care was being provided at the jail because "Denver has a long history of failing to train its personnel properly for medical issues relating to inmates and has not remedied its failures."

2016 WL 5791208, at *14. No evidence or argument has been presented on this front. Thus, even if LaSalle Defendants and Bowie County were found to be liable to Plaintiff, there remains an issue of fact as to whether Texarkana was deliberately indifferent to Bowie County's failure to

ensure that LaSalle provided constitutionally adequate medical care to detainees. Accordingly, Plaintiff's motion for summary judgment as to Texarkana is **DENIED**.

**VIII.    Texarkana does not have sovereign immunity to § 1983 or Arkansas Constitution claims.**

Defendants contend that Texarkana has sovereign immunity to negligence and Arkansas Constitution claims. Defendants' arguments follow the same reasoning they argued that Bowie County had immunity in Ground 5. *See supra* Section V. For the same reasons as discussed above regarding Bowie County, Defendants' Ground 8 for summary judgment is **DENIED**.

**IX.    LaSalle Management can be held liable.**

Defendants contend that LaSalle Management Company, LLC cannot be held directly liable, cannot be held liable as a parent or subsidiary company and cannot be held liable as a guarantor of the contract between LaSalle and Bowie County for Plaintiff's alleged constitutional violations. Docket No. 83 at 44–50. Defendants contend that LaSalle Management Company cannot be directly liable because a corporation can only be liable under § 1983 if there is a showing of official sanction of the conduct or practice at issue, and LaSalle Management Company is a Louisiana entity, independent of Southwestern Correctional, LLC, and does not manage or operate the Bi-State Jail in any way. *Id.* at 45. Defendants contend that LaSalle Management Company cannot be held liable as parent company because it is not the wholly owned subsidiary of, or the owner of, Southwestern Correctional, LLC. *Id.* at 45–46. But even if it were, Defendants contend that a parent company is not liable, *per se*; rather, a theory of corporate veil piercing must be pled and proven. *Id.* at 46. Defendants argue that it is a bedrock principle of corporate law that a parent entity is not liable for actions taken by its subsidiaries, and, here, no evidence of alter ego, fraud or failure to observe corporate formalities can be put forward by Plaintiff. *Id.* Defendants further contend that LaSalle Management Company cannot be held liable as a guarantor of a contract

because LaSalle Management Company is a guarantor to the contract for the express benefit of Bowie County and the contract does not create third party beneficiaries. *Id.* at 46–47.

Plaintiff responds that LaSalle Management Company can be held liable. Docket No. 98 at 46–47. Plaintiff points out that Defendants' arguments have already been rejected by the *Sabbie* court. *See Sabbie*, Civil Action No. 5:17-cv-00113, Docket No. 122, at 149–53. Plaintiff further cites the addendum of the contract between LaSalle and Bowie County wherein LaSalle Management Company acknowledges it is the parent company of Southwestern Correctional, LLC, that Southwestern Correctional, LLC is its subsidiary and that, as the parent company, LaSalle Management itself "unconditionally" guarantees "performance of all obligations and duties" under and pursuant to the operative jail operations contract with Bowie County. Docket No. 83-16 at 19. In the addendum, the delegation of jail-operation duties to LaSalle specifically included all "medical care" for inmates, "training of jailers" and the "custody, care and housing of inmates" in compliance with all applicable laws. *Id.*

Section 1983 imputes liability to private companies that agree to assume the public function of operating jails and jail services under contract with public entities. The contract between LaSalle and Bowie County includes a clause wherein LaSalle Management Company guaranteed the "performance of all obligations and duties," including the contract's obligations for total operation of the Bi-State Jail. *Id.* The clause also confirms LaSalle Management is the parent company of Southwestern Correctional, LLC. *Id.* In LaSalle Management Company's guarantee of its subsidiary's contract to Bowie County, LaSalle Management Company has formed the relationship with the public entity for the operation of the jail, which includes operating the jail in a way that meets constitutionally minimum standards for medical care. Section 1983 imputes liability to LaSalle Management Company because LaSalle Management Company itself has

assumed this public function.   Defendants' arguments that, as a matter of law, LaSalle Management Company cannot be liable for constitutional deprivations that occurred at the Bi-State Jail under *Monell* are thus unavailing.   Accordingly, Defendants' Ground 9 for summary judgment that LaSalle Management Company cannot be held liable is **DENIED**.

**X.      Defendants can be held liable for a cause of action alleged by a Texas arrestee based upon Arkansas law.**

Defendants contend that they cannot be held liable for any cause of action based on Arkansas law alleged by a Texas arrestee that takes place in the Bi-State Building.  Docket No. 83 at 51–52.  It is undisputed that Plaintiff is a Texas resident who was arrested in Texas by Texas authorities and was held in the Bi-State Jail.  The Bi-State Jail occupies a floor of the Bi-State Building and physically extends into both Texas and Arkansas.  Texas and Arkansas thus entered into an interstate compact with reciprocal legislation addressing jurisdictional issues.  The Texas Legislature codified the compact as Local Government Code §§ 361.021–361.029.

Defendants contend that these provisions delineated jurisdiction between Texas and Arkansas, and Texas law applies to Plaintiff. *Id.*  Defendants point to § 361.029, arguing it requires treating a person in the Bi-State Jail in the custody of Texas as being under Texas jurisdiction anywhere in the building. *Id.*  Defendants also contend that Arkansas waived jurisdiction over an inmate in the Bi-State Jail who has been arrested by a Texas authority. *Id.*

Plaintiff responds that Arkansas state law claims are available to him.  Docket No. 98 at 47.  Plaintiff argues that the entirety of his incarceration took place in Zone 2 of the Bi-State Jail, which is physically located in Arkansas, and thus Defendants' failure to appropriately monitor and provide medical services to Plaintiff occurred in the State of Arkansas. *Id.*  Plaintiff also contends that the compact merely ensures that a particular agency's jurisdiction over its arrestees is

maintained. *Id.* But, as most of the relevant conduct occurred in Arkansas, his claims are actionable under Arkansas law. *Id.*

The Texas Code Section that Defendants rely on is titled "§ 361.029: Arrest, Prosecution, Extradition, and Service of Process at Justice Center." In pertinent part, it states:

> (a) A person who is in the justice center in the custody, under the law of this state, of a peace officer or center personnel:
>
>> (1) is constructively present in this state while the person is in custody in the part of the center located in the other state;
>
> …
>
> (i) If a person in the justice center is constructively present in one state under this section, the law of the state in which the person is not constructively present may be applied to the person only to the extent that the law of that state would apply if the person were actually outside that state. However, the law applicable to that person's conduct while in the justice center is governed by Section 361.028, and the question of whether extradition is required to arrest or prosecute that person for an offense committed in the center is governed by this section.

TEX. LOC. GOV'T. CODE ANN. § 361.029. According to the statute, Plaintiff was constructively located in Texas throughout his detainment. This, however, is not the end of the inquiry. Section 361.028 is titled "Extent to Which Each State's Law Applies at Justice Center" and governs a person's conduct while in the Bi-State Building. In pertinent part, this section reads:

> (a) Except as otherwise provided by this subchapter, the law of both states that relates to the rights, duties, liabilities, privileges, and immunities arising from conduct applies to conduct that occurs in any part of the justice center. If it is impossible for a person in the center to conform the person's conduct to the law of both states, the person may choose which state's law governs the conduct. If the person elects to follow the law of the other state, the conflicting law of this state does not apply to the conduct.

*Id.* at § 361.028 (a).

Section 361.029 is specifically delineating the jurisdictional quagmires that may occur when people in the Bi-State Building can be arrested, served or extradited by either Texas or Arkansas authorities. *Id.* at § 361.029. The first sentence of § 361.029(i) relates to those acts. *Id.*

Page **29** of **30**

at § 361.029(i) ("If a person in the justice center is constructively present in one state under this section, ***the law of the state in which the person is not constructively present may be applied to the person only to the extent that the law of that state would apply if the person were actually outside that state***." (emphasis added)).   But the statute clearly indicates that this jurisdictional application does not apply to other conduct within the Bi-State Building.  The second sentence of § 361.029(i) points to § 361.028 for the law applicable to a person's conduct while in the building. *Id.*

Section 361.028 states "***the law of both states*** that relates to the rights, ***duties***, ***liabilities***, privileges, and immunities arising from conduct ***applies to conduct that occurs in any part of the justice center***."  *Id.* at § 361.028 (a) (emphasis added).  Thus, the laws of both Texas and Arkansas may apply to the alleged conduct and liabilities of the jail employees that occurred within the Bi-State Building and led to Plaintiff's claims.

Defendants' citation to the *Erie* doctrine does nothing to change this analysis, as this is a Texas court, applying a Texas statute to a Texas resident.  Accordingly, Defendants' Ground 10 for summary judgment that no defendant can be liable for any cause of action alleged by Plaintiff based on Arkansas law is **DENIED**.

## CONCLUSION

Defendants' Motion for Summary Judgment (Docket No. 83) is **DENIED**.  Plaintiff's Motion for Summary Judgment as to Declaratory Judgment Claim (Docket No. 64) is **GRANTED-IN-PART** and **DENIED-IN-PART**: it is granted as to Bowie County, Texas, and denied as to the City of Texarkana, Texas.

**SIGNED this 21st day of April, 2021.**

**Page 30 of 30**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE